## Carrie Taylor v. Julia A. Welsh et al.
## Gen. No. 13,562.

1. BAILEES—*what conversion by.* An unauthorized sale by a mere naked bailee is a wrongful conversion of the property, and the sale is void as to the owner.

2. PERSONAL PROPERTY—*when sale of, void.* A sale of personal property by one without authority to make the same is void, and the property sought to be sold, or its value, may be recovered in an appropriate action.

3. REPLEVIN—*when demand not essential to maintenance of.* A demand is not essential to the maintenance of an action of replevin where the defendants came wrongfully into possession of the property sought to be recovered.

4. REPLEVIN—*what damages may be awarded in action of.* In an action of replevin it is proper not only to award the return of the property in question, but to award damages for detention to the extent of the difference in value between the property when the defendant wrongfully took possession thereof and the value thereof at the time of the recovery of such possession by the owner; but expenses in obtaining such a recovery are not an appropriate element of damage.

5. APPELLATE COURT—*when may enter final judgment.* Where a cause has been tried before a court without a jury, the Appellate Court may render final judgment in favor of the appellant where its view of the effect of the evidence is contrary to that entertained by the trial court.

Replevin. Appeal from the Superior Court of Cook county; the Hon. GEORGE A. DUPUY, Judge, presiding. Heard in this court at the March term, 1907. Reversed and judgment here. Opinion filed December 23, 1907.

**Statement by the Court.** The appellant, Carrie Taylor, sued appellees, Julia A. Welsh and Mrs. L. A. Woodard, before a justice of the peace in replevin for a cat. The cat was taken on the writ, and the right of possession was found in plaintiff by a jury in the justice's court, and her damages were assessed at the sum of fifty dollars and judgment was rendered accordingly.

The appellee, Welsh, appealed from the justice's

judgment to the Superior Court of Cook county, and the case was tried in that court, by the court, without a jury, and the court found for the appellees and rendered judgment against the plaintiff for costs, and the plaintiff, Carrie Taylor, appealed to this court.

The cat was a white Persian cat named "Major." He was quite distinguished, having won prizes and received honors at cat shows. He was also a moneymaker. He was hired by cat fanciers for temporary association with female cats at the rate of ten dollars an association. His value was estimated variously by the witnesses as will hereafter appear.

Major, as appears from the testimony of Miss Welsh, at one time belonged to her, and she gave him to Mrs. Thomas Welsh, her sister-in-law, and Mrs. Thomas Welsh, as Miss Welsh says she heard, traded him to the appellant for a picture. Mrs. Taylor, the appellant, testified that she purchased Major at Janesville for a picture. The evidence is clear that Mrs. Taylor was the owner of Major when the replevin suit was commenced. Appellant formerly lived in Janesville, Wisconsin, but left there about January 26, 1905, leaving Major in the care of her mother, Mrs. Perrigo. About March 5, 1905, appellee Welsh went to Mrs. Perrigo's house in Janesville to see appellant, thinking she was there, and when she found appellant was not there, she asked Mrs. Perrigo if appellant wanted to sell Major, and Mrs. Perrigo told her she thought not, appellant had never said anything about it, and that she, Mrs. Perrigo, did not want to let the cat go, as it was not hers. She then said to Mrs. Perrigo that if she, Mrs. Perrigo, would let her have the cat she would pay her $50, and if her daughter did not want to sell the cat, she, appellee, would return it, and her daughter could refund the money. Mrs. Perrigo took the $50 and let appellee Welsh take the cat, and as appellee went out of the door she said: "I hope you will influence your daughter not to call for the cat." Miss Welsh, herself, testified: "Mrs.

Perrigo did not want to do this without the consent of her daughter, as she was afraid she would not like it, and I said, 'Well, if Carrie does not like it, I will send the cat back and you can send the money back.' "

Appellant testified that she did not authorize the selling of the cat, and it was sold without her knowledge or consent. Miss Welsh took the cat to Chicago, and in about two days after her arrival there, she sold a half interest in it to the appellee, Mrs. Woodard, for $25, and told her at the same time it was possible that Mrs. Perrigo would want the cat returned in case her daughter would not be satisfied with her, Mrs. Perrigo's action in the matter. Miss Welsh left the cat with Mrs. Woodard and subsequently it was taken on the writ by the officer, who was accompanied by Mr. Taylor, the appellant's husband. The cat, when taken on the writ, was sick and nearly dead.

Frederick W. Story and J. W. Merriam, for appellant; J. W. Merriam, of counsel.

William S. Newburger, for appellees.

Mr. Justice Adams delivered the opinion of the court.

Appellees' counsel contend that the alleged sale by Mrs. Perrigo was a conditional one, and that a demand for the cat before suing was essential, and say that the trial judge so held. That the presiding judge of the trial court held a demand necessary, we think apparent from propositions marked refused.

Mrs. Perrigo, appellant's mother, was a mere naked bailee of the cat, without any authority to sell or dispose of it in any way, and appellee Welsh, at the time of her alleged purchase, knew that appellant was the owner of the cat and that Mrs. Perrigo had no authority to sell it. Knowing this, she sold a half interest in it to Mrs. Woodard, who also knew that Mrs. Perrigo had no authority to sell it.

The contention that the alleged sale by Mrs. Perrigo was a conditional sale is untenable. It was not, in law, any sale, absolute or conditional, and conveyed no title whatever. A conditional sale, like an absolute one, can only be made by the owner or by his or her authority. An unauthorized sale by a mere naked bailee is a wrongful conversion of the property, and the sale is void as to the owner. 3 Am. & Eng. Ency., 2nd ed., p. 754, and cases cited; Calhoun v. Thompson, 56 Ala. 166, 171; Grant v. King, 14 Vt. 367; Medlin v. Wilkerson, 81 Ala. 147; Swift v. Moseley, 10 Vt. 208; Lovejoy v. Jones, 30 N. H. 164; McGinn v. Butler, 31 Ia. 160; Hendrick v. Evans, 46 Mo. App. 313; Rankin v. Shepardson, 89 Ill. 445; Burton v. Curyea, 40 Ill. 320; Klein v. Seibold, 89 *ib.* 540.

In Hendrick v. Evans, *supra,* the court say: "Defendant contends that since plaintiff placed the property in the possession of his hired man, Abbott, and that he bought of ·Abbott, honestly believing him to be the true owner, he should now be protected. This will not do. Abbott was a mere bailee, and that the relation does not authorize or empower him to convey a good title against the true owner is too plain to require discussion."

In Fawcett v. Osborne, 32 Ill. 411, W. H. and F. Stevens, tanners, were bailees of certain hides, to be tanned by them, and when tanned to be delivered to the plaintiffs. F. Stevens sold the hides to the defendants, who paid him for them. The court held the plaintiffs were entitled to recover, saying, among other things: "The defendants' vendor had but a naked possession. This cannot prevail against the right of the real owner, who is entitled to follow his property and reclaim it wherever found. The buyer should have taken care that the title was in his vendor. He having no title, the defendants acquired none." *Ib.* 428.

In Ashland Block Association v. Edward Thompson Co., 94 Ill. App. 501, goods were mortgaged by a per-

son whom the court held to be a mere bailee, and the appellant purchased them at a foreclosure sale under the mortgage. The court held against the appellant, and said: "If the transaction was in fact a bailment only, then, whether that fact were known to appellant or not, the bailee is in law entitled to his goods as against appellant, to whom they were wrongfully conveyed by appellee."

The contention that the appellees were, or either of them was, lawfully in possession of the cat, cannot be sustained. Both the appellees well knew that appellant owned the cat, and both knew that Mrs. Perrigo had no authority to sell it, conditionally or otherwise. The contrary is not claimed. Miss Welsh testified: "I told Mrs. Woodard that she must understand it was a possibility that Mrs. Perrigo would ask to have the cat back, if her daughter was not perfectly satisfied with her action in the matter, and Mrs. Woodard paid the money with that understanding of course." The evidence also shows that Mrs. Woodard knew the cat belonged to appellant. Each of the defendants came wrongfully into the possession of the cat, and therefore no demand before bringing suit was necessary

"Where one's property has been disposed of by the one having it in charge, without authority, the owner may bring replevin for it without a previous demand." Coffey on Replevin, sec. 512, citing Trudo v. Anderson, 10 Mich. 357, and Ballou v. O'Brien, 20 ib. 304, which cases fully support the text.

In Clark v. Lewis, 35 Ill. 420, the defendant had purchased a horse from a pound-master who sold him without lawful authortiy. The owner of the horse brought suit in replevin against the purchaser. The owner recovered in the trial court, and the purchaser sued out a writ of error. It was contended that a proper demand should have been made before bringing suit, but was not, in respect to which the court say: "Plaintiff in error having acquired no title to the property by his purchase, his possession was wrongful. Being wrongfully in possession, a demand was un-

necessary." The case is cited with approval and the same rule announced in Tuttle v. Robinson, 78 Ill. 334. It was also so held in Oswald v. Hutchinson, 26 Ill. App. 273, Hartman v. Loptien, 93 *ib.* 472, and Schwamb Lumber Co. v. Schaar, 94 *ib.* 544.

Mr. and Mrs. Taylor each testified that the cat was worth $150.   B. W. Stratton, who saw the cat at a national show, where he was one of the judges, testified that he was worth $125; one witness testified that he was worth $130, and one $100.   Mr. Taylor testified that when he called with the officer who had the writ, which was about 7 or 7:30 o'clock P. M., Mrs. Woodard told him, before he saw the cat, that he was "very sick and going to die, if not already dead," and that he found him in Mrs. Woodard's kitchen, dirty, vomiting, and with his nose on the ground, and unable to get up. After taking him to the hotel where witness was stopping, he called a veterinary, who arrived at the hotel about 10:30 in the morning, and treated the cat; but the cat died the next morning between one and two o'clock A. M.   The veterinary testified that he made a *post mortem* and found a condition of inanition and starvation, resulting from an obstruction of the large intestine, producing blood poisoning. Appellant was entitled to recover as damages the difference between the value of the cat when Miss Welsh got possession of it, and its value when taken on the writ. At the latter time he was clearly of no value.   In view of the evidence we think $100 a fair estimate of the damages.   Appellant's counsel claim that the damages should include the expenses of Mr. Taylor, incurred in trying to find the cat, etc., but this we cannot concede.

The case was tried before the judge without a jury, and we can perceive no good reason for sending it back to the trial court for another trial, on probably the same evidence.   The judgment will be reversed and judgment will be entered here in favor of the appellant and for $100 damages, appellant to recover her costs in this court and in the Superior Court of Cook county.

*Reversed and judgment here.*