# Westinghouse Air Brake Company *v.* Harris, Appellant.

*Contracts—Sales—Vesting of title—Separation from bulk—Receivers—Replevin.*

1. Upon a rule for judgment for want of sufficient affidavit of defense in an action of replevin, it appeared by the pleadings that the property replevied consisted of 5,200 tons of pig iron; that this pig iron was part of a larger amount of the same material manufactured and owned by a furnace company and pledged to the selling agent of the furnace company and stored upon a lot of ground owned by the furnace company but leased to and in possession of the selling agent; that under its contract with the furnace company, the selling company took title to the pig iron, held possession and made sale of the same; that the selling company sold 5,200 tons of the pig iron in question, received the purchase price therefor, and issued certificates of ownership for the same to the purchasing company; that subsequently thereto and before any separation from bulk had been made, the furnace company passed into the hands of a receiver; that after the appointment of the receiver the goods replevied were separated and marked with the initials of the purchasing company, by someone interested in the sale, but without the authority of the receiver; that upon the lot with the iron in question, there was a large amount of pig

iron belonging to the furnace company over which the selling company had no dominion. *Held,* that in such a case, title vested in the vendee, as against the furnace company, and that an action of replevin was maintainable therefor.

*Replevin—Right of possession—Judgment for want of sufficient affidavit of defense—Title—Damages—Writ of inquiry—Act of April 19, 1901, P. L. 88.*

2. In this State, an action of replevin lies for property of one person in the possession of another, even if the claimant never had possession providing he has the right of possession.

3. The effect of a judgment for want of a sufficient affidavit of defense in an action of replevin under Section 5 of the Act of April 19, 1901, P. L. 88, is to determine the title to the property in dispute. The plaintiff must resort to a writ of inquiry for the assessment of damages.

Argued May 9, 1912. Appeal, No. 47, Jan. T., 1912, by defendant from order of C. P. Fayette Co., Dec. T., 1910, 375, making absolute rule for judgment for want of sufficient affidavit of defense, in case of Westinghouse Air Brake Co. v. Walter C. Harris, receiver of Dunbar Furnace Co. Before FELL, C. J., MESTREZAT, POTTER, ELKIN and MOSCHZISKER, JJ. Affirmed.

Rule for judgment for want of sufficient affidavit of defense. Before UMBEL, P. J.

The facts appear by the opinion of the Supreme Court.

*Error assigned* was in entering judgment for plaintiff for want of affidavit of defense.

*Abraham M. Beitler,* with him *Johnson* and *Rush,* for appellant.—Goods sold must be ascertained, designated and separated from the stock quantity with which they are mixed before the property can pass: Hutchinson v. Hunter, 7 Pa. 140; Pennsylvania R. R. Co. v. Hughes, 39 Pa. 521; Haldeman v. Duncan, 51 Pa. 66; Golder v. Ogden, 15 Pa. 528; Hutchison v. Com., 82 Pa. 472; Conrad v. Pennsylvania R. R. Co., 214 Pa. 98.

As between the air brake company and the furnace company, the former could not by replevin exercise a right to go upon the furnace company's land and select the iron it claimed would fill its contract. And as it could not have succeeded in repleving against the furnace company, it cannot hope to succeed against its receiver: Duplex Printing Press Co. v. Clipper Publishing Co., 213 Pa. 207; Sholes v. Asphalt Block & Tile Co., 183 Pa. 528.

*H. S. Dumbauld,* with him *John A. Emery,* for appellee.—The contract between Dunbar Furnace Company and Wister & Company, gave dominion over the 30,000 tons of pig iron placed on the Wister leasehold to Wister & Company. This dominion was not disturbed by the appointment of the receiver: Fidelity Insurance Trust and Safe Deposit Company v. Roanoke Iron Company, 81 Fed. Repr. 439; National Exchange Bank v. Furnishing Co., 27 S. W. Repr. 297; Kirkpatrick v. Milling & Export Co., 137 Fed. Repr. 387; Thompson v. Patrick, 4 Watts 414.

If Wister & Company could convey title before the receiver's appointment by marking, and they could, just as surely had they the right to convey title by marking after the appointment: Davidson v. Mayne, 31 Pitts. Leg. J. 73; Conrad v. Penna. R. R. Co., 214 Pa. 98; Ayers v. McCandless, 147 Pa. 49; Cessna v. Nimick, 113 Pa. 70.

An action of replevin lies in Pennsylvania where the property of one person in the possession of another whether the claimant ever had possession or not, provided he has the right of possession: Harlan v. Harlan, 15 Pa. 507; Miller v. Warden, 111 Pa. 300; Ferguson v. Lauterstein, 160 Pa. 427; Snyder v. Stehman, 10 Pa. Superior Ct. 639.

OPINION BY MR. JUSTICE ELKIN, July 2, 1912:

This is an appeal from an order making absolute a rule for judgment for want of a sufficient affidavit of

defense. It is an action of replevin, the property re-plevied being 5,200 tons of pig iron. The air brake company purchased this pig iron and paid $74,050 in cash for it. It was stored on a lot of ground owned by the furnace company, but leased to and in the pos-session of the Wister Company. The Wister Com-pany was the selling agent of the furnace company and from time to time advanced moneys to that company as working capital, taking title to the pig iron as a pledge of security for the loans thus made. The Wis-ter Company took possession of the pledged pig iron by storing it upon the leased premises over which it exercised absolute control and supervision. Under its contract with the furnace company the Wister Com-pany took title to the pig iron, held possession and made sale of the same, giving proper credits as sales were made from time to time after deducting commis-sions. The right of the Wister Company to sell the pig iron and make title to the purchaser is not ques-tioned, and this is what was done in the present case. At the time of the sale of the pig iron 52 certificates of ownership, each certificate calling for 100 tons of pig iron, were issued to the air brake company. When the certificates were issued and the purchase price paid in full the transaction between the parties was closed in all respects except as to delivery. It is contended for appellant that at the time of the sale in question there were stored on the Wister lot 30,000 tons of pig iron and that the 5,200 tons were a part of the total mass, not marked, nor separated, nor identified for the purpose of delivery so as to pass title. In support of this contention the rule is urged, that goods sold must be ascertained, designated and separated from the stock or quantity with which they are mixed before there is a completed transfer of the title, and until this is done, the title remains in the vendor and the property does not pass to the vendee. It must be con-ceded that this is a correct statement of a general rule

of law established in this State and recognized in most
jurisdictions.  Its application must necessarily depend
to a considerable extent upon the nature of the trans-
action, the course of dealing relating to the subject mat-
ter of the sale, and the facts of each particular case.
When so viewed we have reached the conclusion that
the appellant is not in position to assert the general rule
relied on so as to defeat the right of the appellee to
claim and recover the property which it bought and
paid for prior to the appointment of the receiver.  We
think it sufficiently appears from the pleadings that
title to the pledged pig iron stored on the Wister lot,
including the 5,200 tons sold to appellee, passed from
the furnace company to the Wister Company under
the agreement entered into between these parties.  It
is true that the Wister Company was the general selling
agent of the furnace company, but as to the pledged
pig iron stored on the Wister lot, it is equally true,
that it held title and possession, with the right to sell
at such prices and upon such terms as it might choose
to make.  The legal status of the Wister Company and
the furnace company was fixed by their own agree-
ment prior to the institution of receivership proceed-
ings, and the appointment of a receiver did not change
that status, at least as to acts consummated and as
to title to property which had passed prior to that
time.  Neither the furnace company, nor the receiver,
could have maintained an action of replevin against
the Wister Company for the pig iron stored on the
Wister lot, the title to which had passed under the
agreement between these two companies, because the
latter company held both title and possession.  When,
therefore, the Wister Company sold the iron in dispute
to the air brake company, neither the furnace com-
pany in the first instance, nor the receiver subsequently,
was in position to interfere with the sale and delivery
to the air brake company.  In this view of the case,
the Wister Company alone was the only party in posi-

tion to raise the question that the pig iron was not so marked and identified as to pass title to the air brake company. It is important to keep this fact in mind in considering what the sheriff did in executing the writ of replevin. The sheriff was commanded to replevy and deliver to the air brake company the 5,200 tons of pig iron in dispute. He made return that he had taken possession of the goods and chattels as commanded by writ of replevin, and that he found the pig iron marked A. B. piled in separate lots upon the premises where stored. He attached to his return the number of each separate lot of pig iron so marked. Here, then, is the official return of a sworn officer to the effect that in the execution of the writ he went upon the ground, found the pig iron in dispute piled in separate lots, each lot numbered and marked A. B., and that he seized and took possession of the same. It is apparent that the letters A. B. stood for air brake company. If these facts be true, it would seem to necessarily follow, that there was a sufficient identification and marking of the property to pass title even under the general rule relied on by appellant. It is argued, however, and it is so averred in the affidavit of defense, that the separation and marking of the pig iron was done after the appointment and without the authority of the receiver. This point would have much force if the receiver had the authority either to mark or prevent the marking of the pledged pig iron stored on the Wister lot, but as hereinbefore indicated, the title to this pig iron was in the Wister Company, which company sold it to the air brake company with full authority not only to sell but to make delivery, and therefore it is of no avail for the receiver to say that he did not assent to the marking for the purpose of delivery. He had nothing to do with the sale and delivery of this pig iron, and no one else questioned it. The pig iron was initialed and set apart by some-one, presumably by parties interested in the sale and

purchase, and when the sheriff went upon the premises he found the pig iron called for by his writ of replevin set apart in separate lots and properly marked. Under these circumstances the air brake company made out a prima facie case of title and right of possession which the averments of the affidavit of defense were not sufficient to overcome.

In this State, the action of replevin lies for property of one person in the possession of another, even if the claimant never had possession, provided he has the right of possession: Ferguson v. Lauterstein, 160 Pa. 427. In the present case, the air brake company having purchased and paid for the pig iron had the right of possession and can properly maintain the action. Appellant strongly urges that there were stored upon the Wister lot in addition to that pledged to the Wister Company, several hundred tons, perhaps a few thousand, of pig iron, over which the Wister Company did not have dominion, and that this being a part of the general mass gave the receiver the right to assert title to and take possession of all the unpledged pig iron even if stored upon the Wister lot. This may be true, but that would be a question between the Wister Company and the receiver, or perhaps other claimants. It is certainly true that the receiver had the right of possession to all the pig iron, not pledged, and of all other pig iron, the title to which remained in the furnace company at the time of his appointment as receiver. But this does not affect the rights of the air brake company in the present action. It is conceded that the 5,200 tons in dispute here were a part of the pig iron held in pledge by the Wister Company; that it was in the possession of the Wister Company on the leased premises; that it was sold to the air brake company by the Wister Company as part of the iron pledged to it; and that the Wister Company had the right to sell and make delivery. Under these facts it is immaterial in determining the question of ownership

and right of possession in the air brake company that the furnace company may have had other pig iron stored on the Wister lot.

It is suggested by the learned counsel for appellant that the order making absolute the rule for judgment for want of a sufficient affidavit of defense is irregular under the pleadings, and that it not only settled the question of title, but had the effect of entering judgment for the amount of damages claimed. If the judgment had this effect we would feel called upon to reverse it in order that the damages, if there be any, could be properly assessed. But we quite agree with the learned counsel for appellee as to the effect of judgment for want of a sufficient affidavit of defense under Section 5 of the Act of April 19, 1901, P. L. 88, the form and effect of which are regulated by this section of the replevin act. It seems perfectly clear that a rule absolute for want of a sufficient affidavit of defense under the provisions of this section does nothing more than determine the title to the property in dispute. The plaintiff must resort to a writ of inquiry for the assessment of damages: Painter v. Snyder, 22 Pa. Superior Ct. 603. In the present case the plaintiff did not attempt to assess damages, and making the rule absolute did not include damages. There is therefore no necessity to strike off the assessment of damages, or to reverse the judgment on this ground. If the plaintiff claims damages it must resort to a writ of inquiry to have them assessed.

Judgment affirmed.