## R. H. Beaumont Company v. National Sand & Gravel Company.

*Webster S. Achey,* for plaintiff; *Ernest S. Glickman,* for defendant.

Boyer, J., September 1, 1931.—This motion grew out of an action of replevin brought by the plaintiff against the defendant to recover certain sand and gravel digging equipment and machinery. No counter-bond having been filed; possession was delivered to plaintiff. Judgment was entered in favor of the plaintiff for want of a sufficient affidavit of defense. The declaration averred title and right of possession in the plaintiff by reason of default in payment of instalments due from the defendant to the plaintiff upon a written agreement of lease or conditional sale of the property replevied. The plaintiff averred that it demanded the delivery of the property to it after default had been made. The affidavit of defense denied the agreement set forth in the declaration, but averred another agreement of an earlier date, but also reserving title and right of possession in plaintiff. The affidavit of defense admitted the default and title and right of possession in the plaintiff, but denied plaintiff's demand of delivery and averred that it never refused the plaintiff possession of the property, but, on the contrary, asserted that it had requested the plaintiff to take possession.

After judgment was entered for plaintiff on the pleadings, the plaintiff filed an assessment of costs and damages, which were subsequently stricken off by consent. In lieu thereof, this writ of inquiry was issued to determine plaintiff's damages, whereupon the defendant filed this motion to quash the writ of inquiry on the ground generally that, so far as the record shows, the plaintiff was not entitled to damages, nor to the particular items of damages which had been set forth in its assessment of damages. Amongst these items was an item of $50, premium on the replevin bond, and an item of $774.98, cost of dismantling, packing, hauling and transporting to the plaintiff's place of business in Camden, New Jersey, the machinery in question.

Neither the præcipe directing the issuance of the writ of inquiry nor the writ itself mentions the replevin bond premium nor the cost of dismantling, packing and transporting the goods replevied as items of damages, the præcipe merely directing: "issue writ of inquiry of the damages in the above case." The writ itself refers to damages and plaintiff's costs, charges and

expenses. However, plaintiff gave defendant notice and counsel for both sides treated the writ as referring to, and being intended to assess, the two above-mentioned items, they, in fact, being the real items in dispute. It is conceded that there is no necessity for a writ of inquiry to determine the usual taxed costs, *i. e.*, the prothonotary's and sheriff's costs. These can be taxed in the usual way, and if erroneous in amount or charge can be excepted to in the manner provided by rule of court. The defendant's reasons set forth in their motion to quash can, therefore, be discussed, first, as to the right to a writ of inquiry generally, and, second, as to the two particular items referred to in counsel's arguments and briefs.

The record shows that possession of the goods was delivered to the plaintiff and that no counter-bond was filed by the defendant. There is, therefore, no question to be determined under a writ of inquiry as to the value of the goods replevied, or as to plaintiff's damage by reason of the loss of the goods. There is nothing on the record to show any unlawful detention on the part of the defendant for any specified period of time, nor of the consequent loss of use of the goods by the plaintiff, nor is such claim made. There can, therefore, be no occasion for a writ of inquiry to recover damages for detention or loss of use. The plaintiff, however, claims that it suffered substantial loss by reason of the expense to which it was put in dismantling, packing and transporting the goods in question, and that, consequently, this is an item of damage to be assessed by writ of inquiry. It also claims that the bringing of the action of replevin was a necessity and, consequently, required the further expenditure by the plaintiff of the sum of $50, surety's premium on the replevin bond, and that this is a further item of damage.

Had the conditional sales agreement provided that, in case of default in payment of instalments under the agreement, the defendant should thereupon return and deliver to the plaintiff at its place of business, or other specified place, the articles sold under the agreement, then there might be some ground for the contention that the plaintiff was entitled to be reimbursed for its expenditures in removing the goods. However, the agreement attached to the declaration, as well as the one attached to the affidavit of defense, merely gives the plaintiff the right to repossess the goods wherever found, with or without an action at law. They place no duty of delivery whatever upon the defendant. The declaration does not state, nor does the affidavit of defense upon which judgment was entered admit, that the defendant refused to permit the plaintiff to enter upon the premises and to repossess the articles sold under the agreement. On the contrary, the affidavit of defense specifically states that the plaintiff had been requested by the defendant to repossess and remove these goods. Nor do the pleadings show that there was any tortious taking or conversion of the goods by the defendant. The goods came into their possession lawfully and with the consent of the plaintiff, and under an agreement which did not require the defendant to redeliver the goods to the plaintiff at any time or place, but merely to permit the plaintiff to remove them. Under these circumstances, we fail to see how the cost of dismantling and removing the articles can be charged against this defendant. The judgment in favor of the plaintiff for want of a sufficient affidavit of defense does nothing more than determine the right of the plaintiff to the possession of the goods: Westinghouse Air Brake Co. *v.* Harris, 237 Pa. 203, 210. Had the defendant filed a counter-bond and retained the goods, then, of course, a writ of inquiry would have been the proper procedure to determine the plaintiff's damages in the loss of its goods: Painter *v.* Snyder, 22 Pa. Superior Ct. 603. Or if this had been a replevin after a distress for rent,

the writ would have been the proper remedy: Clemons *v.* Will, 5 Lacka. L. N. 143.

Plaintiff's counsel advances the ingenious theory that this item for cost of dismantling, transporting, etc., is a part of the sheriff's costs in executing the writ, and, therefore, properly taxable or recoverable as such and to be determined under the writ of inquiry. We deem it a sufficient answer to this contention, first, that the writ of inquiry is not the proper remedy for the determination of officers' costs and fees; second, that it is admitted that the sheriff did not make these expenditures, but has taxed comparatively small and undisputed items as his fees and costs; third, that if the sheriff had expended these amounts for that purpose, they should have been claimed by him as his costs and taxed in the regular way; and, fourth, that had the sheriff attempted to charge these items as his costs, they could not have been sustained as such, for clearly a sheriff cannot dismantle heavy machinery, pack it and transport it to another state as a part of his official duty under the writ.

The general rule is clear that special damages in order to be recovered must be pleaded. This is true in replevin as well as in other actions: Schofield *v.* Ferrers, 46 Pa. 438; Com. *v.* Ferrarini, 20 Luzerne Leg. Reg. 267; Ferguson *v.* Hogan, 25 Minn. 135. We are of the opinion that the dismantling, packing and transporting machinery to a foreign state would be a special damage which should have been specially pleaded. The pleadings in this case not only fail to show such damage to be recoverable, but in fact, by the terms of the agreement of sale, clearly negative the right to such special damage.

Even though plaintiff had pleaded special damage by way of necessary expense of dismantling and transporting the machinery and such necessity had been admitted in the affidavit of defense, by the weight of authority this would not have been an item of damage properly recoverable in replevin: Com., to use, *v.* Lintott, 64 Pa. Superior Ct. 328, in which the court said: "There are several items mentioned in the assessment of damages complained of that have no proper place therein. In the absence of a statute so providing, there is no warrant for embracing in the assessment of the legal costs and damages, contemplated by the statute, counsel fees for the plaintiff, sums paid to deputy sheriffs for working over time, and a lump item called costs expended to recover possession of car." In Bridgeman *v.* Augusta Cooperage Co., 147 Ark. 378, an item of $96 for cost of hauling logs to the river was held not to be a proper item of damage in replevin. In Taylor *v.* Welsh, 138 Ill. App. 190, the plaintiff replevied a cat. It was held that she could not recover as a part of her damages her railroad expenses incurred in bringing the cat back. In Renfro's Administrator *v.* Hughes, 69 Ala. 581, which was an action of replevin to recover the plaintiff's horse which had been stolen and sold to a third party in another state, it was held that the plaintiff was not entitled to recover his railroad fare necessarily expended in recovering his horse, as an item of damage. We may, therefore, conclude that the item of transportation to plaintiff's place of business in New Jersey would not have been a proper item of damage even if the taking had been tortious, and much less so could it be a proper item where the defendant's possession was entirely lawful according to the pleadings.

If the plaintiff in this case had averred that it had endeavored to secure possession on a certain date under the terms of the agreement and such possession had been refused, and these facts had been admitted in the affidavit

of defense, then there might be ground for a claim for damages for detention or loss of use, but this does not appear in the present case.

As to the right to recover the premium on the replevin bond as an item of damage, although the question does not seem to have been ruled upon in Pennsylvania, we agree with the decisions of other jurisdictions that this is not a proper item of damage, in the absence of statutory provision allowing the same: The Willowdene, 97 Fed. 509; Williams *v.* Atchison R. R. Co., 156 Cal. 140; Brick *v.* Reese, 52 Hun (N. Y.), 125; Somerville *v.* Wabash R. R. Co., 111 Mich. 51. In The Willowdene, *supra*, the court said: "The second objection must be dismissed. It may be desirable that corporations should take the place of individual sureties, and that the charge for assuming the obligation should become part of the costs of litigation. If desirable, there are two ways by which the result may be properly reached;—either by legislation, such as was adopted by the state of Pennsylvania concerning corporate sureties on the bonds of certain trustees (Laws, 1895, P. L. 248); or by a rule of court, if power to make such a rule exists." And in Brick *v.* Reese, *supra*, it was said: "We think the clerk and the court below were clearly right in disallowing the item. It would seem plain, therefore, that no payment to a corporation for acting as a surety can properly be taxed as a disbursement in an action unless a similar payment, if made to a person for acting as such surety, could properly be taxed. But it has never been supposed or even suggested in any case, so far as we are aware, that the expense of procuring an individual to become a surety on a bond or undertaking was taxable as a part of the necessary disbursements in an action." We are entirely in accord with the reasoning of these courts.

We conclude, therefore, that, under the pleadings and the state of the record in this case, the plaintiff is not entitled to recover any damages, either for the cost of premium on his bond, for the transportation of the goods, the detention of the goods or any other stated cause, and that, therefore, the writ of inquiry was improvidently issued and must be quashed.

Now, September 1, 1931, the motion to quash the writ of inquiry is granted and the writ is quashed.

From Isaac J. Vanartsdalen, Doylestown, Pa.