28 P.(2d) 657

**IRICK v. ELKINS.**

**No. 3849.**

Supreme Court of New Mexico.

Dec. 27, 1933.

H. C. Denny and H. S. Glascock, both of Gallup, for appellant.

F. C. H. Livingston and R. P. Barnes, both of Albuquerque, for appellee.

HUDSPETH, Justice.

This is an action of replevin to recover possession of fifty head of coming three year old Herford heifers, branded One Bar (|—), and damages for the detention thereof.

In February, 1929, Roy Irick, the plaintiff herein, entered into an agreement with one Vick Hail whereby the latter was to take charge of a ranch belonging to Irick, known as the Agua Torres ranch and located in Socorro county, for a period of six years. By the terms of this agreement, Irick was to stock the ranch and pay all of its running expenses; the profits were to be applied to the payment to Irick of interest on his investment, to the repayment of his expenditures for running expenses and to the liquidation of his original investment. Ownership of the ranch and cattle was expressly reserved to Irick, who was, however, to deed one-half of the ranch and stock to Hail if, at the end of the period named in the agreement, Irick had been completely reimbursed for his original investment and other expenditures, with interest thereon. If, on the other hand, the investment had sustained a loss, Hail was to be liable to Irick for one-half the amount of such loss. The operation of the ranch and all purchases and sales of live stock were to be under the supervision and control of Irick, who was, however, to confer with Hail before making any purchases or sales of "considerable importance." Other features of the agreement will be pointed out elsewhere.

Irick lived in Texas and made only infrequent visits to the ranch. In the latter part of December, 1930, Hail, without the knowledge or consent of Irick, turned over to one Tom Keenan the cattle here in dispute, branded One Bar, which brand was recorded in the name of Roy Irick in the State Brand Book of the Cattle Sanitary Board, with instructions to drive them to a ranch belonging to one Walter Morman, located near Laguna in Valencia county. The cattle were driven as directed, the trip to Morman's ranch taking two or three weeks. In the latter part of

January defendant purchased the cattle from Hail for $2,200, Hail representing to him that they belonged to Hail and one J. D. Wright and that they were branded Lazy T (⊢). Defendant was given a bill of sale under that brand and alleged ownership. There is no question raised as to the good faith of the defendant in purchasing the cattle from Hail in Grants, and there is evidence to indicate that, the Lazy T brand being very similar to the One Bar brand, the two might easily be confused unless a close inspection of the cattle were made, especially in the wintertime, when the hair on the cattle is long.

In the early part of March, Irick, who had meanwhile discovered that the fifty head of cattle were missing, with the aid of Tom Keenan and others, located the cattle at the ranch of Elkins near Grants. Elkins made no attempt to conceal the cattle, and, upon being told by Irick that the cattle had not belonged to Vick Hail and had been wrongfully taken by him, agreed to turn them back to Irick. Meanwhile, however, Irick made a deal with the defendant and Mark Elkins, a brother of the defendant, who was present at the time, whereby Mark Elkins was to buy the cattle for $2,500. Irick gave a bill of sale under the correct brand and took Mark Elkins' check for $2,500, dated March 7th. This check was subsequently dishonored, payment on it having been stopped when defendant was told by some one that Hail had had authority to sell the cattle. Whereupon, on April 7th, plaintiff filed his complaint and affidavit in replevin.

The complaint alleged ownership and right of possession in plaintiff and wrongful detention by defendant. Defendant denied the material allegations of the complaint and set up certain affirmative defenses based upon the existence of an alleged partnership between Irick and Hail. Plaintiff replied, denying the allegations contained in defendant's answer, and, the issues thus framed, the case was tried to a jury.

Appellant contends that the trial court erred in excluding from the evidence in the case the written agreement between Irick and Hail mentioned above, and certain other evidence offered by defendant in proof of the existence of a partnership, and in taking from the jury the defense set up by Elkins that he bought from a partner without notice of any limitation on the right of said partner to sell the property.

The written agreement between Irick and Hail, the principal basis of appellant's contention, did not constitute the parties partners. The test to be applied to the determination of the existence or nonexistence of a partnership in fact is the intent of the parties, and if. there is no intent to assume that relation, it does not exist. Hannett v. Keir, 30 N. M. 277, 231 P. 1090. The sharing of profits and losses is not conclusive of this intention. Rowley on Partnership, § 89. Nor does a mere community of interest in property constitute a partnership. Pearce v. Strickler, 9 N. M. 467, 54 P. 748. In its risk apportionment features the agreement somewhat resembles a partido contract, yet the legal consequences of a partnership relation have never been held to attach to the relationship existing between the parties to such a contract. See Milliken v.

Martinez, 22 N. M. 61, 159 P. 952; Encino State Bank v. Tenorio, 28 N. M. 65, 206 P. 698. One of the principal attributes of a partnership relation is that of mutual agency, and while its absence is not conclusive, it is a circumstance to be considered. Rowley, op. cit. supra, § 85. Here, as appellee points out, Hail, under the agreement in question, had no more authority than is customarily recognized in and exercised by a ranch foreman in the cattle business. The agreement, construed as a whole, shows an employer-employee relationship, with employee's compensation for his services to be a right to purchase one half of the employer's property used in the enterprise, and a right to appropriate to the purchase price thereof all of the net profits of the enterprise during the period named in the agreement. The agreement failing to indicate a partnership, or authority in Hail to dispose of or sell Irick's cattle, the trial court committed no error in excluding it from the evidence.

 Additional evidence relied upon by appellant to show a modification of the excluded agreement or to show a partnership are equally unpersuasive either of the existence of a partnership or of authority in Hail to sell the cattle here in question. The carrying of a bank account in the name of Irick & Hail and the drawing of checks by Hail on that account for the payment of certain expenses of the operation of the ranch were clearly contemplated by the written agreement. The duties of management imposed upon Hail, his duty to account to Irick periodically, and the provisions relative to the advancement by Irick of all necessary moneys to finance the operation of the ranch would necessitate some such arrangement, as a matter of bookkeeping, to facilitate the carrying out of the terms of the contract. Nor does the execution by Hail, in the name of Irick & Hail, of two promissory notes, totaling $300, indicate a modification of the agreement, which merely provided that Hail "shall not have authority *hereunder* to execute notes on behalf of himself or second party in furtherance of the enterprise." The fact that Irick told a prospective purchaser of some of the cattle on the ranch that if he wanted the cattle at less than $45 per head he would have to consult Hail is equally without significance. The agreement expressly stipulated that in making sales that were of considerable importance, Hail was to be consulted. None of these matters are sufficient to indicate a partnership or authority in Hail to sell cattle. Nor, since they were not known to the defendant at the time he purchased the cattle, can they be held to create a partnership by estoppel. A partnership by estoppel can exist only in favor of one who has relied upon the appearance of a partnership. American National Bank v. Wood, 24 N. M. 268, 171 P. 507. Moreover, the mere fact that the cattle were continuously left in Hail's possession did not vest in him indicia of title sufficient to protect one dealing with him as an owner. Encino State Bank v. Tenorio, 28 N. M. 65, 79, 206 P. 698. See, also, Mechem on Agency, §§ 849, 2110, 2115, et seq.; Restatement, Agency, § 200.

For the reasons outlined, we are of the opinion that the trial court committed no er-

ror in taking from the jury the affirmative defenses set up by defendant to the allegations of plaintiff's complaint.

This brings us to a consideration of alleged errors in the trial of the issue of damages.

■ At the trial, the court admitted, over the objection of the defendant, testimony as to expenses incurred by plaintiff in locating his cattle at Elkins' ranch, and instructed the jury to allow as damages the reasonable and necessary expenses incurred by plaintiff in locating the replevined property, which the jury specially found to be $150. This action of the trial court was erroneous. Section 105-1701 of the 1929 Compilation entitles a plaintiff in replevin to damages in such sum as will compensate him for the injury he has sustained by reason of the wrongful taking or detention of the defendant. Hyde v. Elmer, 14 N. M. 39, 88 P. 1132. Had defendant been a party to the original tortious taking of the cattle by Hail from plaintiff's ranch, plaintiff would be entitled to such expenses. Mitchell v. Burch, 36 Ind. 529; Miller v. Garling, 12 How. Prac. (N. Y.) 203; Cobby on Replevin, page 497; Sutherland on Damages (4th Ed.) § 1146. Had he made any attempt to conceal his possession of the cattle from the plaintiff, he might be held liable for expenses incurred by plaintiff by reason of such concealment. Here, however, defendant admittedly purchased the cattle in good faith, believing them to be Lazy T cattle and the property of Vick Hail, and having no knowledge of plaintiff's ownership or claims to ownership until plaintiff made demand upon him. He cannot, therefore, be held liable for expenses incur-

red by plaintiff prior to demand made upon him for the return of the property. Such expenses cannot, under the circumstances, logically be said to have been caused by the wrongful detention complained of. See Renfro's Adm'x v. Hughes, 69 Ala. 581; Taylor v. Welsh, 138 Ill. App. 190; but see, semble contra, Brennan v. Shinkle, 89 Ill. 604.

We consider next the contention that the trial court erred in instructing the jury, after verdict, to change the amount of damages allowed by them for depreciation in the value of the cattle from $450 to $1,000.

■ At the conclusion of the trial, the court charged the jury that the depreciation in the value of the cattle during the time the defendant withheld them was a proper element of damage, which they might find in favor of the plaintiff, in case they found from the evidence that there was such depreciation, and, further, that in finding the elements of value and of depreciation they were to be guided by the evidence offered and not by any imaginary or supposed valuation. The jury returned a verdict allowing $450 for such depreciation. Thereupon, on motion of plaintiff, the court refused to receive this verdict and instructed the jury to return to the jury room and change the amount of damages allowed from $450 to $1,000. This action on the part of the trial court was improper.

Assuming, without deciding, that the evidence as to the depreciation in the value of the cattle during the time they were wrongfully withheld by defendant was such that the court might properly have directed a verdict for plaintiff in the sum of $1,000 in the

first instance, nevertheless, we are of the opinion that, plaintiff having acquiesced in the assumption, implicit in the trial court's original instructions, that the amount of damages to be awarded was for the jury's determination, and having remained silent throughout the time the jury was deliberating, the court was powerless to grant his motion to peremptorily instruct the jury to increase to $1,000 the verdict returned. The original instructions given by the court, being unexcepted to, became the law of the case on the issue of damages. See State v. Wallis, 34 N. M. 454, 283 P. 906; State v. Armijo, 35 N. M. 533, 2 P.(2d) 275; State v. Reese, 36 N. M. 28, 7 P.(2d) 295; Marchant v. McDonald, 37 N. M. 171, 20 P.(2d) 276. Had plaintiff invoked the court's discretion before the jury returned a verdict, our decision might be different (see and cf. State v. Vigil, 33 N. M. 365, 369, 266 P. 920, 922), but to countenance the procedure followed in the case at bar would contravene the policy of the rule well established in this jurisdiction, that speculation on the result of the deliberations of the jury cannot be permitted. State v. Merritt, 34 N. M. 6, 275 P. 770.

Other points relied upon by appellant for reversal require little comment.

Appellant urges that the verdict of the jury, merely finding generally for the plaintiff on the issues of the cause, was insufficient, in that it failed to specifically find that the plaintiff was the owner of the property described in plaintiff's complaint and affidavit in replevin, or to describe the property which plaintiff was entitled to recover. Defendant made no request for special findings on these matters, and his contention cannot be sustained. A general verdict in replevin is sufficient, in the absence of a request for special findings. Gallegos v. Lopez, 27 N. M. 603, 204 P. 71.

We cannot consider appellant's final contention that the evidence shows that at the time of the filing of the suit ownership of the cattle was not in plaintiff, but in Mark Elkins, and that therefore the court erred in instructing the jury to find for the plaintiff on the issue of ownership. This theory of defense is advanced for the first time on appeal. Section 105-830 of the 1929 Comp. does not aid the defendant. It merely dispenses with the necessity for taking formal exceptions to the giving or refusal to give instructions to a jury in order to secure a review of the same on appeal, but it does not authorize the determination by this court of matters not specifically called to the trial court's attention. See Childers v. Southern Pac. Co., 20 N. M. 366, 149 P. 307; James v. Hood, 19 N. M. 234, 142 P. 162; State v. Gonzales, 19 N. M. 467, 144 P. 1144; State v. McKnight, 21 N. M. 14, 153 P. 76.

Because of the errors committed at the trial, the judgment appealed from will be reversed. Those errors, going only to the amount of damages, will not necessitate a new trial if appellee will consent to a proper deduction. The cause will be remanded, with a direction to grant a new trial unless appellee shall file a remittitur in the sum of $700, in which case the judgment, as modified by such remittitur and by deducting the costs of the

appeal, will be enforced. Such modified judgment should go against appellant and his supersedeas sureties. It is so ordered.

WATSON, C. J., and SADLER, BICKLEY, and ZINN, JJ., concur.