452 P.2d 475

Arthur E. VAUGHAN, Individually, and as Ancillary Executor of the Estate of Gerald Wolfe, Deceased, Plaintiff-Appellant,

v.

Patricia WOLFE and Mission Inn Pancake Cottage, Inc., a corporation, Defendants-Appellees.

No. 8506.

Supreme Court of New Mexico.

Feb. 17, 1969.

Rehearing Denied April 8, 1969.

Garland, Martin & Martin, Neil E. Weinbrenner, Las Cruces, for plaintiff-appellant.

Darden & Mechem, Las Cruces, for defendants-appellees.

## OPINION

MOISE, Justice.

Plaintiff-appellant appeals from the trial court's judgment denying him any relief. It is plaintiff's position, as set forth in his complaint and as testified to by him, that he and Gerald Wolfe, deceased, in March 1961, entered into an oral partnership agreement to operate a restaurant on the Mission Inn premises in Las Cruces. Plaintiff asserts, that under their original agreement he was to have a 10% partnership interest which was later increased to 25%, and that the partnership terminated with Wolfe's death on February 26, 1966. He sought an accounting of the operation of the business from its inception to the time of suit.

We detail the following uncontradicted facts as disclosed by the record. Plaintiff is an architect and a resident of Amarillo, Texas. Much of his work is connected with designing · and setting up restaurant operations. By written lease dated March 1961, in consideration of a lease rental therein set forth, The Mission Inn, Inc., as lessor, leased the restaurant and kitchen area of its administration building, together with certain furniture, fixtures and equipment, to Jerry Wolfe and Arthur Vaughan d/b/a Wolfe & Vaughan, as lessee, for a five-year term commencing May 1, 1961. Thereafter, considerable correspondence passed between Mr. Bruce, the owner of the Mission Inn, and plaintiff, concerning the restaurant operation. Also, there were a number of letters from plaintiff to Mr. Wolfe. However, so far as the record discloses, there was nothing whatever concerning the restaurant operation signed by Mr. Wolfe on behalf of Mission Pancake House, except the lease and a draft for $5,000.00 dated March 12, 1963, drawn on behalf of Mission Pancake House by G. Wolfe, payable to plaintiff and bearing the notation, "Profit Share." Plaintiff received an additional check drawn by Mission Pancake House on August 21, 1963, in the amount of $1,000.00, but this check bore the signature of the bookkeeper and not of the decedent. It further appears that a corporation known as Mission Inn Pancake Cottage, Inc., was organized in Texas and authorized to do business in New Mexico, and that the restaurant was ostensibly operated by the corporation. However, no stock certificates in the corporation were ever issued. The $5,000.00 check was shown as a "deduction" in the corporation's federal income tax return for the year ending March 31, 1963, as "share of net income to Arthur Vaughan," and the $1,000.00 check was similarly shown as a deduction in the return for the year ending March 29, 1964.

The trial court made numerous findings which are attacked on this appeal, including No. 7, which is crucial, to the effect that "No oral agreement of partnership was ever made or entered into by plaintiff and Gerald Wolfe to share net profits (as a partnership)."

No fewer than twenty separate points are argued in appellant's brief. It may be stated that these points generally raise the issue of what evidence is sufficient to establish a partnership and whether the proof presented was substantial and met the applicable tests.

No question is raised concerning the rule that this court is bound by findings of fact made by the trial court which are supported by substantial evidence. Armijo v. World Ins. Co., 78 N.M. 204, 429 P.2d 904 (1967); Hammond v. Blackwell, 77 N.M. 209, 421 P.2d 124, (1966). It is asserted,

however, that the numerous findings attacked are not so supported.

■ We have detailed the proof presented by the plaintiff in the trial court, most of which may be described as documentary or unquestioned. If the record disclosed nothing more, we would encounter no difficulty in concluding that a partnership had been sufficiently established. In this connection, the notation "Profit Share" on the $5,000.00 check signed by Mr. Wolfe is particularly convincing. Section 66-1-7, N.M.S.A. 1953, provides that with certain exceptions not pertinent here, receipt by a person of a share of profits in a business is prima facie evidence of the existence of a partnership. That such a prima facie showing was made cannot be doubted. See Zajac v. Harris, 241 Ark. 737, 410 S.W.2d 593 (1967); Miller v. Salabes, 225 Md. 53, 169 A.2d 671 (1961). The additional evidence detailed by us strengthens the proof of the partnership. Of course, we note that there was no corroboration, in writing or otherwise, of plaintiff's assertion that his interest was originally 10%, which decedent later advised was increased to 25%. In view of the conclusion reached by us, it is not necessary that we consider whether proof of a partnership can be accomplished without a clear showing of the percentage of participation of each of the partners. However, see Irick v. Elkins, 38 N.M. 113, 28 P.2d 657 (1933); Minder v. Gurley, 37 Wash.2d 123, 222 P.2d 185 (1950); Potter v. Scheffsky, 139 Wash. 238, 246 P. 576 (1926); Annot., 137 A.L.R. 19.

■ Plaintiff's problem arises by virtue of the following findings by the court, none of which are attacked and accordingly are facts upon which our decision must rest. Baca v. Gutierrez, 77 N.M. 428, 423 P.2d 617 (1967).

"5. Plaintiff is a knowledgeable and experienced business man who has participated in (other) partnership ventures, appears well educated, and continually employed accountants and lawyers in his business.

"6a. While plaintiff appears to have had the precaution of having his attorney prepare a lease of March, 1961, signed by the plaintiff and Gerald Wolfe, as lessees, with the Mission Inn, Inc. (for premises of Mission Inn Pancake Cottage restaurant), yet by plaintiff's own testimony, no partnership agreement between himself and Gerald Wolfe, or memorandum, was ever executed in writing.

"b. On the contrary, plaintiff indicated that while one was prepared, it was destroyed; or in any event, never executed.

"c. Further, plaintiff, while apparently being aware of the propensities of Gerald Wolfe about correspondence or Gerald Wolfe's dislike for writing, plaintiff did not bother to confirm any purported relationship—and specifically the partnership which the plaintiff contended (and which the trial court found did not exist) by letter or any other written memoranda. On the other hand, plaintiff maintained that he left it up to his friend, Joshua Kahn.

"* * *.

"[11]b. Plaintiff reported for income tax the $5,000.00 check given to him in 1963 by Gerald Wolfe as a dividend and not as partnership profit; also, * * *.

"12a. In 1963, or thereabouts, Gerald Wolfe engaged in expansion and secured the architectural services of plaintiff.

"b. Plaintiff reported the $1,000.00 check given to him in 1963 by Gerald Wolfe as architectural fees, and not as any partnership profit. * * *

"13a. Plaintiff did not show as an asset any partnership between him and Gerald Wolfe on financial statements prepared for plaintiff's use in 1963 or 1965.

"b. Nowhere, in any financial statement, did plaintiff refer to any such partnership as he contended; and while such partnership, had it ever existed (and which the trial court found did not exist) would have seemed more valuable, yet plaintiff did not bother to list or to

include it in any of his financial statements; whereas another partnership, presumably of less value, appears to have been carried on financial statements introduced into evidence, and the partnership in question was not referred to.

"* * *.

"18. While plaintiff appears to be a well educated organizer, an architect who knows about business relationships, and to have taken the trouble of confirming in writing other business transactions and partnerships, significant here is the absence of any memoranda, written agreement, or any correspondence clearly confirming any such partnership and the terms thereof, and the absence of such militates against the existence of the claimed partnership."

Certain additional findings concerning the dealings between the plaintiff and decedent, which the trial court considered as indicating the absence of any understanding, agreement, or partnership relation, were made by it and are here attacked as not supported by substantial evidence. While we entertain considerable doubt that the findings so attacked are lacking in support in the record, we do not consider them to be necessary to a disposition of the appeal.

The trial court had before it the documentary proof detailed above which, as already stated, would have supported a finding that a partnership existed. There is no evidence directly contrary; but the matters covered in the quoted findings, in our view, may be described as noting improbabilities and suspicious circumstances surrounding the dealings, so as to furnish support for the finding that there was no partnership proved, notwithstanding the otherwise unquestioned evidence. When this is the situation, we are bound not to substitute our views as to what the evidence shows or what portion of it is credible. Arretche v. Griego, 77 N.M. 364, 423 P.2d 407 (1967); Brown v. Cobb, 53 N.M. 169, 204 P.2d 264 (1949); Medler v. Henry, 44 N.M. 275, 101 P.2d 398 (1940). When viewed in this light, we find the conclusions reached by the trial court, and the judgment entered denying plaintiff relief, to be free from reversible error.

The judgment appealed from is affirmed. It is so ordered.

NOBLE, C. J., and COMPTON, J., concur.