[Civ. No. 13625.   Second Dist., Div. Three.   Dec. 8, 1942.]

E. W. FRENCH, Appellant, v. SMITH BOOTH USHER
COMPANY (a Corporation), Respondent.

Dan C. Critchley and Herbert Cutler Brown for Appellant.

Paul Overton for Respondent.

SHAW, J. pro tem.—Plaintiff appeals from a judgment adverse to him, entered after a trial before the court sitting without a jury. In his complaint plaintiff alleged that at the time of the transaction in question he was engaged in the business of hauling cement, sand and gravel and the defendant was in the business of selling machinery for use in mixing those materials and depositing them in place; that on July 27, 1940, he purchased from defendant, on conditional sale contract, two trucks, on which were mounted concrete mixers, and other apparatus for use in connection therewith, and that on October 22, 1940, he purchased from defendant further apparatus for the same purpose, which was added to the conditional sale contract by amendment, making the total price, including carrying charges, $21,368.85, on which plaintiff was to trade in two trucks valued at $1,155 and pay $800 in cash, the balance due being payable in installments of $540 per month beginning December 1, 1940. Plaintiff alleged that he was induced to enter into this contract by "representations" of defendant's agents that it would give him every assistance in building up the business of mixing and hauling concrete by means of this apparatus and that it would give him such reasonable extensions of time for payment "as he might reasonably require, regardless of the amounts and times of the installment payments as set forth in said proposed conditional sale contract," and that these representations "proved to be false and were made by defendant to plaintiff both in the full knowledge of their falsity and without the intention to perform them. . . . " Plaintiff further alleged that on January 2, 1941, defendant came to plaintiff's place of business and took possession of all the movable part of the apparatus which was the subject of the conditional sale contract and removed it from plaintiff's premises and thereby rendered the remainder thereof useless and made it impossible for plaintiff to carry on his business therewith, to his damage in the sum of $7,187.03. All of this was in a first cause of action. A second cause of action was stated by adopting all the first except the allegation of damages, adding to it an allegation that plaintiff was not in default when defendant retook the property, and alleging damages from the retaking in the same sum, $7,187.03, with further damage to accrue at the rate of $50 per day.

The court made findings that "each and all of the allega-

tions of the complaint . . . touching the matter of false representations claimed to have been made by the defendant . . . are found to be untrue'' and that ''there were no false representations nor fraud in fact,'' and also a finding specifically negativing the allegations of the complaint that the defendant stated it would give the plaintiff extensions of time for payment. ■ While the fraud alleged in the complaint did not consist of representations, but of promises made without intention of performing them, the complaint several times referred to these promises as ''representations'' and alleged that they were ''false.'' A finding using the same words in negativing the complaint must be regarded as sufficient. ■ No evidence tending to show that defendant made the promise alleged regarding assistance to plaintiff in building up his business has been called to our attention, and on examination of the record we have found none. Plaintiff and his son testified that defendant's agents said something about ''playing ball'' with plaintiff if he could not make his payments as agreed, but defendant's agents in their testimony denied these statements. The findings above mentioned are sufficiently supported by the evidence. ■ Since they negative all the promises going to make up the fraud alleged as a basis for the plaintiff's first cause of action, they support a judgment adverse to him on that cause of action; hence we need not consider plaintiff's contentions that the court failed to find on various other allegations of that cause of action (24 Cal.Jur. 947), nor the question, which would otherwise arise, whether the making of an oral promise contrary to the terms of the written contract, without the intention of performing it, can be relied on as the basis for a charge of fraud.

■ Plaintiff's second cause of action, insofar as it differs from the first by the introduction of a new element, the retaking of the property sold when plaintiff was not in default, is essentially one for conversion. The contract authorized defendant to retake the property if any payment should not be made when due, but it is true, as alleged in this cause of action, that plaintiff was not in default when defendant retook the property. A payment due on December 1, 1940, was paid only in part, but defendant in writing extended the time for payment of the balance thereof until the end of the contract. The next payment was due January 1, 1941, by the terms of the contract; but, since that day was a holi-

day, plaintiff had all of the next day, January 2, in which to pay. (Civ. Code, § 11; Code Civ. Proc., § 13.) The retaking occurred early in the morning of January 2. Such a retaking, if there were nothing more to the case, would be a conversion. (55 C.J. 1323; *Carvell* v. *Weaver*, (1921) 54 Cal.App. 734 [202 P. 897].)

But the defendant alleged and the trial court found that the retaking of the property was done with the plaintiff's consent. There is evidence to support this finding. Some time in December, 1940, plaintiff told defendant's president he would not be able to make the payment in January. Two of defendant's agents visited plaintiff on the 30th or 31st day of December, 1940, and asked him if he were going to be able to make the next payment ($540) and plaintiff answered that he did not see how he could. They said they would have to have the money or the equipment and plaintiff said "all right." On the morning of January 2, 1941, defendant's credit manager, Bowman, called plaintiff by telephone and asked him if he had the $540 payment, to which plaintiff answered that he would not be able to pay. Bowman then said, "Then, according to our agreement, it will be necessary for us to come and get the equipment," to which plaintiff responded "All right." Bowman then sent a man named Jones and some helpers out to plaintiff's place of business with orders to get the equipment. Jones testified that when he arrived there he told plaintiff he was from defendant, and "that I understood he had made arrangements for us to take back the two trucks and mixers on them. . . . . He said 'all right.' " Jones and his helpers then drove away the trucks on which were the mixers. No other part of the property sold was retaken by defendant. It is a fair inference from this testimony that plaintiff, realizing he would be unable to make the payments as provided in the contract and would therefore be unable to keep the property, consented to the proposed act of defendant in retaking it and that defendant acted on this consent in retaking it on January 2, instead of waiting until the next day, when its right, under the contract, to take possession would have been complete. Under such circumstances defendant committed no conversion in retaking the property when it did. "He who consents to an act is not wronged by it." (Civ. Code, § 3515.) "To constitute conversion, nonconsent to the possession and dis-

position of the property by defendant is indispensable. If the owner expressly or impliedly assents to or ratifies the taking, use, or disposition of his property, he cannot recover as for a conversion thereof; . . . '' (65 C.J. 14; see, also, *Watson* v. *Commonwealth Ins. Co.,* (1936) 8 Cal.2d 61 [63 P.2d 295], which follows this rule, although not stating it; *Lusitanian-American Dev. Co.* v. *Seaboard Dairy Credit Corp.,* (1934) 1 Cal.2d 121, 129 [34 P.2d 139]; *Watson* v. *Stockton Morris Plan Co.,* (1939) 34 Cal.App.2d 393, 402 [93 P.2d 855].)

Plaintiff now contends that his consent to the retaking was not effective because there was no consideration for it and also because he was not aware of his right to make the payment next day. But no consideration was necessary. His act of consent was not the making of a contract; it merely prevented the defendant's acts of which he now complains from being a conversion and would be as effective for that purpose if purely voluntary. Plaintiff did testify that he was not aware of the legal rule by which a payment due on a holiday could be made on the next business day. We need not determine what effect such ignorance on his part would have on the validity of his consent, for the trial court was not bound to accept this statement as true. He also testified that he had been in business since 1918, contracting and dealing generally in matters of importance, that he knew about legal holidays, knew that January 1 was such a holiday, that banks were not open that day and that ''you could do business on the next day,'' and that he was fully familiar with the custom and practice about doing business on the next day. The trial court could properly regard this as impeaching his declaration of ignorance of the law.

Soon after the beginning of the trial plaintiff made a motion for judgment on the pleadings on the ground ''that there is no sufficient verification of the answer; that under the testimony of the man who made the verification the only allegation here is that the defendant is a corporation and entered into the contract.'' The two allegations here referred to appear to be allegations of the complaint which were expressly admitted in the answer. Before making this motion plaintiff called as a witness the officer of defendant who made the verification of the answer and he testified that some allegations of the complaint—not going to the substance of the

action—which appeared to be denied by the answer were true, and that other allegations, appearing to be denied positively, were of matters regarding which he had no personal knowledge. The verification itself was an affidavit in which the affiant stated that the answer was "true of his own knowledge, except as to the matters which are therein stated upon his information or belief, and as to those matters that he believes it to be true." This is a form of verification sanctioned by section 446, Code of Civil Procedure. Plaintiff's objection, however, as we understand it, is not that the form of the affidavit of verification is insufficient, but that it is in fact untrue in some respects because the affiant had no such knowledge regarding the facts as he claimed therein to have. We know of no warrant for the raising of such an objection to the verification of a pleading. Where a complaint is verified, as it was here, the answer also must be verified, with some exceptions not applicable here. (Code Civ. Proc., § 446.) If an answer is not sufficiently verified in such a case, it may be stricken out (21 Cal.Jur. 242), or judgment on the pleadings may be ordered (21 Cal.Jur. 237). This rule has been applied where there was no verification of the answer at all (*Hearst* v. *Hart,* (1900) 128 Cal. 327 [60 P. 846] ; *H. G. Bittleston Law etc. Agency* v. *Howard,* (1916) 172 Cal. 357, 362 [156 P. 515]), and also where the verification showed on its face that it was not made by a proper person (*Silcox* v. *Lang,* (1889) 78 Cal. 118, 123 [20 P. 297]), but it should not be extended to cases where it is necessary to inquire into the truth of the verifying affidavit in order to show the insufficiency of the verification. If a verification appears to be made by a person authorized by law to do so and complies in form and substance with the statutory provisions, it must be regarded as sufficient to install and support the answer as a pleading.

In argument of this point plaintiff calls attention to the form of the denials in the answer, contending that they are insufficient. It is true, the denials are simply of "the material allegations" in specified paragraphs of the complaint. This form of denial does not conform to the permission given by subdivision 2 of section 437, Code of Civil Procedure, for denials of specific paragraphs of the complaint. Such a denial has been held insufficient because it is uncertain as to the allegations denied (49 C.J. 260; *Burke* v. *Interstate Sav-*

*ings & Loan Assn.*, (1901) 25 Mont. 315 [64 P. 879, 87 Am. St.Rep. 416]). The contrary has also been held (49 C.J. 260). But this defect, if it be one, was not assigned as a ground of plaintiff's motion and the case was tried without objection to the form of the denials. If the objection had been made no doubt a correction would have been made. Plaintiff must stand on the motion as made. By failing to make this objection in the trial court he has waived it. (*Burke* v. *Interstate Savings & Loan Assn., supra.*)

The judgment is affirmed.

Schauer, P. J., and Wood (Parker), J., concurred.