[Civ. No. 20211.   Second Dist., Div. Two.   Mar. 15, 1955.]

VIOLA M. KENNEDY BARNES, Respondent, v. FLOR-
ENCE PERSSON et al., Defendants; PAUL MINTZ,
Appellant.

S. L. Kurland for Appellant.

Ezra Neff and William T. Brandlin for Respondent.

McCOMB, J.—From a judgment in favor of plaintiff after trial before the court without a jury in an action to recover damages for fraud and misrepresentation, defendant Mintz alone appeals.

*Facts*: Plaintiff purchased from defendant Florence Persson two pieces of real estate located in the city of Los Angeles, at 915-919 South Kingsley Drive, improved with eight and nine room houses respectively, and the furniture, fixtures and equipment located therein.

Plaintiff agreed to purchase all the property for $32,000. At the time the property was purchased it was leased to defendant Dorothy Newell. Defendant Paul Mintz was a real estate broker with whom the property was listed for sale.

The trial court found:

"VII. That it is true that during said negotiations and prior to said 8th day of December, 1950, defendants Florence Persson (now known as Florence Persson Gilbert), Paul Mintz and Dorothy Newell represented to the plaintiff that under the lease upon said premises hereinabove referred to, defendant Dorothy Newell, as lessee, was paying to defendant Florence Persson . . . , as lessor, and had been paying for many months prior to said date, the sum of $625 each month as rental and that at the time of said negotiations the income derived from said lease by said lessor was $625 per month and that said rent at the time of the sale by the defendant Florence Persson and immediately preceding said sale, was not delinquent.

"VIII. That it is true that each and all of the representations so made by said defendants Florence Persson . . . , Paul Mintz and Dorothy Newell to the plaintiff and particularly described in the foregoing paragraph hereof were false and untrue.

"XII. That each and all of said representations so made by said defendants Florence Persson . . . , Paul Mintz and Dorothy Newell and each and all of them, to the plaintiff, hereinabove found to have been made, were false and untrue and were known by said defendants so making them to be false and untrue at the time same were made and that said representations were so made to the plaintiff by the said defendants with the purpose and intention of deceiving the plaintiff and with the object of having her rely upon same and act upon same in the purchase of said real and personal property, including the lessor's interest in the above described lease hereinabove described as the subject of said sale, and plaintiff did, in fact rely upon said representations so made to her by said defendants and, in pursuance of her said reliance thereon, acted upon same and purchased said real and personal property as hereinabove found, and all of said representations so made to the plaintiff by said defendants were and are material to the transaction entered into by the plaintiff and defendant Florence Persson . . . and the sale so consummated as a result of said escrow hereinabove referred to and were intended by all of said defendants to induce the plaintiff to enter into said transaction and to facilitate the consummation of said sale."

Defendant Mintz contends:

■ First: *There was no fraud in fact for there was no misrepresentation of any material fact made by him to plaintiff.*

This contention is devoid of merit. Finding XII, *supra,* expressly found that the representations that the rental received for the property which was sold was $625 per month was false and untrue; that said statement was made by Mr. Mintz with a knowledge that the same was not true and was made for the purpose and intent of deceiving plaintiff, and plaintiff in fact relied upon such statements and predicated upon such reliance entered into the agreement to purchase the property involved.

It needs no argument to support the theory that in view of such finding the statements were material to the transaction.

■ Second: *The only finding of fraud cannot be sustained because (a) there was no inducing misrepresentation concerning the rental payable by defendant Newell to Mrs. Barnes; and (b) defendant Mintz was not the agent of defendant Newell.*

This contention is likewise devoid of merit. Mrs. Barnes testified as follows:

"Q. Was there anything else said in this first interview or conversation with Mrs. Newell? A. Yes.

"Q. What was said? A. I said that it looks like it was a good business and she said yes, it was a good business.

"Q. Was anything else said? A. And I asked her if she would mind telling me how much rent she got for it, had to pay, and she said $625 a month.

"Q. Was there any other conversation? A. And I asked her then who took care of the keeping up of the two houses and the expense of the interior and upkeep of the two houses, and she said that she had the upkeeping to do, and that I had, or whoever bought it would have three items to take care of which was the insurance, taxes, and the upkeep of the roof.

"Q. Was there anything else said at that time? A. I asked her then if she got a sufficient fund to take care of the expenses of both of these houses and still pay me if I bought it, $625 a month, and she said she got ample income from the property to take care of both of these places and pay $625 a month and still have plenty to take care of she and her children.

"Q. By Mr. Brandlin: Do you understand the question, Mrs. Barnes? A. Yes, I understand that. Shall I proceed?

"Q. If you would, please. A. Well, I went in and talked to Mr. Mintz and asked him to explain and tell me more about the operation of this child-mothers boarding, rooming house on Kingsley Drive, and he said he would be very happy to tell me. He told me he'd be very happy to tell me anything I wanted to know about it, and so I started in asking him questions as Mrs. Newell had told me, what the rents were. I had inquired of that since I was over there and had permission to do so. I inquired as much as I could about it because I wanted to really see what it was before I entered into the business part of it, and he told me that it was a good income, good lease and brought in $625 in rent, and also was sufficient income to take care of the interior and everything that Mrs. Newell was supposed to take care of in the lease which he showed me later. And he also told me that I was to take care of the three items; of taxes and insurance and the roofing and——

"Q. Was there anything else said at this time, Mrs. Barnes, with reference to the purchase and sale of this business?

A. He told me that Mrs. Newell had been paying $625 a month rent, it had been reduced down to $625. It had been $700, and that I asked him then if he thought that if I bought the property that there would be any danger of this property not making $625 in rent and being able to pay all these expenses besides and he said no, there wasn't any chance of it. They had been in business for eight or ten years and that always it had been a paying business. He didn't think there was any chance of their ever falling through.

"Q. By Mr. Brandlin: Who was present at this conversation? A. Mr. Barnes and Mr. Mintz.

"Q. What was said at this conversation? A. Well, the business did bring in $625. I wanted him to assure me that that was proper, that it did bring in $625 to the owner above all expenses except what the owner had to pay on insurance and taxes and roofing, and he told me it was a good business, that he assure me 'it was a good lease, and everything connected to it was a good enterprise.' "

Clearly this testimony supported the trial court's finding that Mrs. Barnes was purchasing the property as income property and that she wanted to be assured that she would derive the income from it which they represented it was making. It is likewise evident that it is immaterial that defendant Newell was not the agent of defendant Mintz for the reason that the trial court found, supported by substantial evidence, that defendant Mintz was personally guilty of overt acts constituting actionable fraud.

Third: *The findings of fraud do not support the judgment against defendant Mintz.*

This contention is not tenable. Defendant claims that there is not a single word in the transcript that defendant Mintz made the statement that the rental for the past several months received from defendant Newell was the sum of $625. The record discloses that defendant Mintz testified thus:

"Q. Did you tell Mrs. Barnes that the lessor was receiving $625 a month? A. Yes, I did.

"Q. And had been receiving that sum for several months; is that correct? A. Yes, I did.

"Q. And did you examine the books to determine that? A. No, I did not."

The foregoing testimony is of course directly contradictory of the statement in his brief.

Fourth: *The trial court failed to find on material issues raised by the complaint for the reason that there is*

*no finding as to the exact amount of rent which was received under the lease.*

This contention is not sound because the issue was whether defendant Mintz had represented that the rental from the property was $625 per month when in fact it was not. The trial court met this issue squarely by its findings VII, VIII and XII, *supra.*

■ As the representation was false and induced plaintiff to enter into the contract it is immaterial as to the exact amount of rent that was received from the rental of the premises. ■ Since the findings cover the material issues raised by the complaint and support the judgment it is immaterial that the trial court failed to make findings upon other issues. (*French* v. *Smith-Booth Usher Co.*, 56 Cal. App.2d 23, 26 [3] [131 P.2d 863].)

■ Fifth: *Defendant was deprived of his constitutional rights for a fair trial.*

This objection is not well taken. At the inception of the trial defendant Mintz was represented by an attorney; the court advised counsel that on a certain date if the case was not concluded, the court would probably declare a mistrial. This was because the court, acting to regulate its own calendar, demanded assurance that the case would be completed by a certain date. At such time the court inquired whether or not all counsel were willing to proceed or whether the case should be returned to the master calendar department for transfer to another judge. All counsel agreed that the matter should proceed without returning to the calendar department.

Thereafter defendant Mintz was substituted in propria persona for his attorney. After a lengthy discussion the trial judge was satisfied that Mr. Mintz knew the seriousness of proceeding without an attorney, and stated to said defendant, among other things, that the attorneys for Mrs. Barnes and Mrs. Newell would not protect his interest in the event there was a conflict in his interest and that of the other defendants. After this explanation defendant Mintz freely and voluntarily consented to the substitution.

From the foregoing it is clear that none of defendant's constitutional rights was violated.

Affirmed.

Moore, P. J., and Fox, J., concurred.