[Civ. No. 24275.   Second Dist., Div. One.   July 14, 1960.]

LEEMORIA B. CRAWFORD, Plaintiff and Appellant, v. ASEMO NASTOS et al., Respondents; FLOYD C. RANKIN, Defendant and Appellant.

Monta W. Shirley for Plaintiff and Appellant.

David Hoffman for Defendant and Appellant.

Schwabacher, Cosgrove & Beaudet and Philip M. Schwabacher for Respondents.

LILLIE, J.—Cross-appeals are here presented from a judgment for damages for fraud in the sale to plaintiff of real property near Lancaster. The action was brought against the owner (defendant Asemo Nastos), the latter's two sons (Jim and Louis Nastos), the real estate broker (defendant Rankin) and one Terkleson who was employed by Rankin. Judgment was rendered against Rankin alone for $1,419.73, plus interest, which sum represented the money spent by plaintiff (after she took possession) to put into operation a water well on the premises. In addition to the appeal by Rankin, plaintiff has cross-appealed, claiming that the judgment should have been for an additional $8,000 and against all the defendants except Terkleson.

Rankin's principal contention goes to the sufficiency of the evidence to sustain the finding of fraud; in this connection, his "Summary Statement of Facts" has been of little assistance to this court, being devoid of any appropriate reference to the record which would support his assertions with respect to the somewhat detailed narrative of events therein set forth; nor is the brief of Crawford, as respondent and cross-appellant, wholly free from criticism, since it is confined to arguments supporting her cross-appeal and fails to answer (except by indirection) any of the arguments presented by her adversaries.

The subject real property was a 50-acre ranch in the Antelope Valley. The complaint alleged that the defendants Nastos listed said land and the improvements thereon for sale with Rankin, and the latter and his salesman (Terkleson) undertook to sell the said property; that at the inception of negotiations between plaintiff and defendants, plaintiff informed each of the defendants that she would not be interested in the property under any conditions unless the same contained an ample water supply. According to the complaint, the defendants fraudulently represented to the plaintiff, both orally and in writing, that the premises had sufficient water supply for the entire acreage (at least 60 miner's inches) which was ample for irrigation and for domestic purposes on an annual basis; it was further alleged that plaintiff was wholly unfamiliar with conditions in and about the area and that she relied wholly and completely upon the representations thus made to her when she undertook the purchase of the property for the total price of $28,000. Each and all of the representations, it was then alleged, was and were false, were known by the defendants to be false, and were made for the express purpose

of inducing plaintiff to enter into the contract of purchase; specifically, said land did not contain an ample supply of water and the water well thereon was not able to supply water to the property year around or for any period of time at all, and said well did not supply 60 miner's inches. The complaint concluded with an itemization of the damages assertedly sustained, including a claim for exemplary damages on the basis of a malicious intent to injure the plaintiff.

The court found that Rankin, admittedly a real estate broker, had employed Terkleson as his salesman during the period in question; that Rankin was the agent of, and represented, the defendants Asemo Nastos (as owner) and Louis Nastos (as her agent) in negotiating the sale of the property; that Louis Nastos listed the property with Rankin who thereupon undertook to sell the land and improvements and caused the plaintiff to be contacted (as a prospective purchaser); and that at the inception of negotiations between plaintiff and Terkleson, plaintiff stated that she would not be interested in the property unless it contained an ample supply of water for domestic and irrigation purposes, for permanent pasture and summer growth, as well as winter crops. The court further found that Rankin, to induce the sale, fraudulently declared to plaintiff (orally and in writing) that there was developed on said premises a water well which supplied sufficient water for the entire acreage, both for domestic purposes and for farming and pasture needs desired by plaintiff, and that said well would produce and did produce at least 60 miner's inches of water; there was a finding, however, that the defendants Nastos did not participate in said representations and did not misrepresent the actual water supply from said well. The court also found that plaintiff at all times in question was unfamiliar with conditions in and about the area and that she relied wholly and completely upon the representations respecting the property which were made to her; that said representations were made by Rankin to induce plaintiff to purchase the land in question from defendant Asemo Nastos, and that as a result she agreed to and did purchase the said property for the sum of $28,000; and that there was not already developed on the said land a water well which supplied sufficient water for the entire acreage to fulfill the various purposes desired by plaintiff, and that said well did not at any time material to the instant controversy produce 60 miner's inches of water. Found to be untrue was the claim that Rankin at all times during the negotiations in question advised plaintiff that he (Rankin)

could not, and would not, warrant or guarantee anything in connection "with the well and/or water conditions"; in this connection there was a further finding that Rankin did suggest an inspection of the well, but "procured a partial and incomplete inspection himself" showing a production of only 51⅓ miner's inches, the results of which inspection were never reported to the plaintiff, and plaintiff never received a report on the condition of "said well and water supply prior to entering into the escrow agreement to purchase said property."

With respect to the defendants Nastos, the court found that there was inserted in the escrow instructions, pursuant to the advice of their attorney, the statement "Buyer has inspected well and accepts same as is"; the court also found that said instructions were approved and signed by the plaintiff although she received no legal advice as to the legal effect of the language just quoted and although she understood that "said comment was referring to the condition of the well as seen by her, and that said well was and would be as represented"; too, "such phrase was accepted by plaintiff by reason of the false and fraudulent representations made to her, as aforesaid, and not otherwise." Finally, the court found that "neither of defendants, Jim Nastos or Louis Nastos, Jr., was a party to the transaction herein as seller, and neither of them received anything of value from said sale; neither of defendants, Asemo Nastos, Jim Nastos or Louis Nastos, Jr., actively participated in the fraudulent representations, and are not, nor is either, liable to plaintiff herein."

We first dispose of Rankin's appeal which is predicated principally on the claim that the evidence was insufficient to support the finding of fraud. "The essence," he says, "of the lower court's finding with reference to appellant's alleged fraud, was that he (Rankin) represented that there was already developed on the ranch a water well which supplied sufficient water for the entire acreage and that it would produce and did produce at least 60 miner's inches of water, and that this representation was false." The written offer to purchase the property, in the form of a "Deposit Receipt" prepared by Terkleson, included the following language: "Buyer to be privileged and have current report on production of water well—having been assured of adequate supply. Must have at least 60 inches (miner's)." Appellant argues that the concurrence of the vendor, his principal, was necessary to bind anyone to the requirement of 60 miner's inches and "if the seller did not accept the conditions set forth in the offer,

certainly the real estate broker could not be held.'' ▇▇ This rather novel contention overlooks the settled rule that every person connected with a fraud is liable for the full amount of damages (*Swasey* v. *de L'Etanche,* 17 Cal.App.2d 713, 718 [62 P.2d 753]) and the wrongdoers (if any) are jointly and severally liable (*Ross* v. *George Pepperdine Foundation,* 174 Cal.App.2d 135, 141-142 [344 P.2d 368]); furthermore, the trial court found, supported by substantial evidence, that Rankin was personally guilty of overt acts constituting actionable fraud (*Barnes* v. *Persson,* 131 Cal.App.2d 515 [280 P.2d 821]). ▇▇ Nevertheless, it is claimed that the statement or declaration in the escrow instructions, namely, ''Buyer has inspected well and accepts same as is'' served to relieve appellant (as well as his principal) of any liability in the premises, citing *Newmark* v. *H and H Products Mfg. Co.,* 128 Cal.App.2d 35 [274 P.2d 702]. It was there held that the trial court properly sustained plaintiff's objection to the introduction of parol evidence which had for its purpose the establishment of representations inconsistent with the express terms of the written contract the parties had entered into (*Simmons* v. *California Institute of Technology,* 34 Cal. 2d 264, 274 [209 P.2d 581]). In the Simmons case, it was pointed out that there is a distinction between an antecedent promise which by its very nature is superseded by the final writing and inconsistent with it, and a promise made with no intention of performing the same, not inconsistent with the writing, but which was the inducing cause thereof (p. 274). The antecedent representations at bar, both oral and written, were not wholly at variance with the contractual features of the ''as is'' clause of the escrow instructions. True, they dealt with the same general subject matter, to wit, the capabilities of the water well; but the clause in question did not completely negative the prior warranty that the flow of water would be that desired by the purchaser (at least 60 miner's inches). For example, if there had been a declaration that the flow was ''not more than 50 miner's inches'' or if other equivalent terminology had been used, there might be more force to the present claim.

▇▇ Nor are we persuaded that validity attaches to the clause in view of the assertion therein that ''Buyer has inspected well . . .'' Unlike the Newmark case, *supra,* which involved machinery and similar personalty clearly accessible to view, the instant representations or warranties concerned matters not of a comparable nature. In *Roby Motors Co.* v.

*Cade,* (La.App.) 158 So. 840, the court said that the use of the words "as is" implies that the buyer takes a chance in making the purchase: "It seems to imply the thought that the buyer is taking delivery of goods in some way defective, and upon the express condition that he must trust to his own examination. The very words 'as is,' taking this contract as a whole, would cause a person to know that the seller meant to say to the buyer, 'You look the article over, and if you buy it, you do at your own risk.' It means much the same as saying, 'If you buy you take the article with all its faults' " (p. 841). In the case at bar, by finding that the purchaser "understood that said comment (the exculpatory clause) was referring to the condition of the well *as seen by her,* and that said well was and would be as represented," the trial court clearly determined that in making such inspection the purchaser did not learn the *true facts,* and also impliedly found that she was under no duty to make an independent investigation despite some prior experience as a ranch owner (*Smith* v. *Metzger,* 76 Cal.App.2d 277, 280 [172 P.2d 889]). While such a finding also serves to distinguish the present situation from that found in *Newmark* v. *H and H Products Mfg. Co., supra,* 128 Cal.App.2d 35, the holding in that case (and decisions therein cited) is not here controlling for the additional reason that no objection was made (as there) to the introduction of evidence now claimed to be inadmissible by virtue of its incompetency. ■ "Incompetent evidence admitted without objection is sufficient to support a finding (citation) and may be considered by the court with other evidence on the subject (citation)" (*Estate of Pohlmann,* 89 Cal.App.2d 563, 574 [201 P.2d 446]). The above rule is applicable to evidence violating the parol evidence rule (*Pao Ch'en Lee* v. *Gregoriou,* 50 Cal.2d 502, 506 [326 P.2d 135]).

■ Finally, the present contention is devoid of merit since an exculpatory provision, such as the one in question, is given sanction under proper circumstances to relieve an honest *vendor* from liability for damages arising from the fraudulent representations of his negotiating agent (*Herzog* v. *Capital Co.,* 27 Cal.2d 349, 353 [164 P.2d 8]) and not the vendor's *agent* who, as the trial court here found, has misrepresented material facts during the course of his dealings with the vendee.

Our examination of the record and briefs discloses that other contentions (save one) going to the general claim that insufficient evidence was produced to establish any fraud on appellant's part simply concern the weight to be accorded

conflicting evidence and inferences; hence, it would be beyond our province to interfere with the pertinent findings thereon. The single exception is the point that any purported misrepresentations were based on information supplied by Jim and Louis Nastos, neither of whom was held to be liable. The court found that Rankin procured a partial and incomplete inspection of the well which showed a production of only 51⅓ inches and that he never reported the results of this inspection to the purchaser prior to the opening of the escrow; in this type of case, "if there is substantial evidence to support the findings with respect to any one material representation or concealment, . . . the judgment must be affirmed (citation)" (*De Spirito* v. *Andrews,* 151 Cal.App.2d 126, 131 [311 P.2d 173]).

Coming now to the liability of respondents Nastos, it is not urged with any degree of vigor that there should be a reversal as to the vendor's sons, Jim and Louis, Jr., since the court determined that neither misrepresented material facts or profited by the transaction and, viewing the evidence in the light most favorable to them as prevailing parties, the record supports such determination; as to respondent Asemo Nastos, the vendor, the situation is otherwise. In addition to the finding just mentioned, the court also found that "neither of defendants, Asemo Nastos, Jim Nastos or Louis Nastos, Jr., actively participated in the fraudulent representations, and are not, nor is either, liable to plaintiff herein."

In so doing, the court appears to have ignored the legal basis of the vendor's liability, namely, that where an agent acting within his actual or apparent authority procures a sale of property by means of fraud, the principal is jointly liable with the agent for damages incurred thereby, even though the principal is innocent of personally participating in the fraud, when he accepts and retains the benefits which accrue from the transaction (*Stumpf* v. *Lawrence,* 4 Cal.App. 2d 373, 377 [40 P.2d 920]; *Gift* v. *Ahrnke,* 107 Cal.App.2d 614, 622 [237 P.2d 706]; *Central Mutual Ins. Co.* v. *Schmidt,* 152 Cal.App.2d 671, 673-674 [313 P.2d 132]). Here the evidence is undisputed that Mrs. Nastos owned the property, authorized and directed Rankin to sell it, that she ratified the sale, executed the deed to Mrs. Crawford, accepted the purchase price from her, and retained the fruits of the sale. It is argued in the vendor's answering brief that Rankin was not her agent because his alleged fraudulent representations were made by him as "an independent broker"; true, the

court so referred to him in the course of summing up and immediately before the rendition of its oral decision, but a finding was subsequently made that Rankin was acting throughout as the vendor's "agent" and hence the claim is wholly unavailing. Another reason why the judgment in vendor's favor should not be permitted to stand arises from an application of the statutory (Civ. Code, § 3543) and common law rule that, "as between two innocent persons both of whom have suffered from the fraud of a third, the loss must fall where the course of business has placed it, if no fault or negligence is imputable to either party (23 Cal.Jur.2d, "Fraud and Deceit," § 48). As stated in *Eamoe* v. *Big Bear Land & Water Co.*, 98 Cal.App. 2d 370, 374 [220 P.2d 408] : "In such cases as that here involved, it is true the agent has been negligent in the performance of his duties, and some innocent person must be loser. Should it not be the one who gave the agent the power which he misused, intentionally or unintentionally?"

An effort is made to distinguish *Ferguson* v. *Koch,* 204 Cal. 342 [268 P. 342, 58 A.L.R. 1176], relied on by the purchaser as authority for the contention that the "as is" clause of the escrow instructions does not insulate the vendor from liability. As already noted with reference to Rankin's appeal, the court specifically found that the purchaser did not in fact make the inspection contemplated by the pertinent language of the exculpatory clause and implied, if it did not expressly find, that the purchaser's consent to the exculpatory language was procured by fraud. It is argued that the purchaser, as likewise urged in the Ferguson case, should have made an investigation or inspection on her own initiative; it seems to us that the point is not well taken since the material facts were accessible to the vendor only and she knew them to be "not within the reach of the diligent attention and observation of the vendee" in which event "the vendor is bound to disclose such facts to the vendee" (*Burkett* v. *J. A. Thompson & Son,* 150 Cal.App.2d 523, 526 [310 P.2d 56]).

In *Lobdell* v. *Miller,* 114 Cal.App.2d 328, 338 [250 P.2d 357], there is this observation by the court: "Numerous visits to the property prior to purchase do not absolutely preclude reliance on false representations made by the seller. Where no duty is imposed by law upon a person to make inquiry, and where under the circumstances a prudent man would not be put upon inquiry, the mere fact that means of knowledge are open to plaintiff and he has not availed himself of them does not debar him from relief when thereafter he shall make actual discovery. The circumstances must be such

that the inquiry becomes a duty, and the failure to make it a negligent omission (citation). ▆▆▆ Where one conducts an investigation, he may still be entitled to rely upon certain representations concerning conditions as to which the investigation does not extend (citation). The evidence does not here conclusively show that the plaintiffs *completely* relied on their own investigation. The questions of the weight of the evidence on the subject and the credibility of the witnesses were for the trial court to determine. (Citation.)''

▆▆▆ All parties to the present appeal challenge the determination below on the issue of damages. The complaint alleged that without the necessary supply of water the land in suit was not worth ''the sum of $575.00 per acre, or any other sum over $200.00 per acre,'' or not to exceed the total sum of $10,000, to plaintiff's damage in the sum of $18,000; additional compensatory damages in the sum of $1,919.73, being the sum assertedly expended for material and labor to put the well ''into the condition as represented'' were also sought, as was $1,260.65 interest paid on the note and trust deed on the premises; plaintiff's claim to exemplary damages is not here pursued and presumably has been abandoned. Parenthetically, the sale was of the whole unit without any value placed on improvements, etc. Shortly before the close of plaintiff's case, she was asked her opinion as to the value of the property on July 10, 1956, the date that title vested; an objection by Rankin's counsel was sustained, whereupon plaintiff's counsel offered to prove by his client that the property was worth not to exceed $300 per acre on the date in question. The ruling, plaintiff claims, was erroneous; there is merit to this point since, as the owner, she was competent to give such testimony (*Long Beach City High Sch. Dist.* v. *Stewart,* 30 Cal.2d 763, 772 [185 P.2d 585, 173 A.L.R. 249]), but there is also merit to her adversaries' contention that the form of the question, namely, ''the value per acre,'' was objectionable since the record does not support plaintiff's claim that the sale was on an acreage basis. As a result of the trial court's ruling, plaintiff's case was submitted for decision without any evidence as to the value of the property in question, and it is now properly contended that the absence of such evidence foreclosed the award of damages for repairs to the well. Pursuant to section 3343, Civil Code, a party defrauded in the purchase of real property is entitled to recover damages in the amount of the difference between what he paid for the property and its reasonable value at the time of the purchase

(50 Cal.Jur.2d, "Vendor and Purchaser, § 460). "The measure of damages thus set forth (Civ. Code, § 3343) is the difference between the consideration paid for the property and the actual value of the property, with additional damage, if any" (*Rothstein* v. *Janss Investment Corp.*, 45 Cal.App.2d 64, 73 [113 P.2d 465]). In the event of a retrial, there should be an adherence to the "out-of-pocket loss" rule which is now firmly a part of our decisional law (*Bagdasarian* v. *Gragnon*, 31 Cal.2d 744, 762-763 [192 P.2d 935]) and the exclusive measure of damages in a case such as this.

For the foregoing reasons, the judgment is affirmed as to respondents Jim Nastos and Louis Nastos, Jr.; as to appellant Rankin and respondent Asemo Nastos, it is reversed and remanded for retrial solely on the question of damages. Rankin's attempted appeal from the order denying a new trial is dismissed.

Wood, P. J., and Fourt, J., concurred.