429 P.2d 904

Marguerite K. ARMIJO, Plaintiff-Appellee,

v.

WORLD INSURANCE COMPANY, a corporation, Defendant-Appellant.

No. 8259.

Supreme Court of New Mexico.

July 10, 1967.

Rodey, Dickason, Sloan, Akin & Robb, Robert M. St. John, Albuquerque, for appellant.

Keleher & McLeod, Russell Moore, Albuquerque, for appellee.

## OPINION

OMAN, Judge, Court of Appeals.

The plaintiff brought suit to recover death benefits in the amount of $5,000.00 under a policy of insurance issued by defendant to plaintiff's deceased husband. The policy provides for the payment of certain benefits for certain designated losses which occur by accidental means.

In its brief in chief defendant has correctly summarized the conditions or events which must occur, in order to meet the policy requirements, before defendant is obligated under the policy to pay for loss of life. These requirements are (1) that the insured sustain bodily injuries through purely accidental means, (2) that the injuries wholly and continuously disable the insured from the date of the accident to the time of death, (3) that death result within 90 days from the date of the accident, and (4) that death result from the accidental bodily injuries *independently and exclusively of disease and all other causes*. This last condition, and particularly the underlined portion thereof, presents the basic issue on this appeal.

The material facts are that decedent sustained an accidental fall on June 1, 1964. As a result, he suffered physical injuries and disabilities. One such resulting injury and disability from which he did not readily recover was a minor head injury, which apparently produced a subdural hematoma on both sides of his head, resulting in slight mental confusion and euphoria.

On July 24, 1964, the blood and fluid under the dura, which were compressing the brain, were removed by an operative procedure. Thereafter, his mental confusion began clearing rapidly and disappeared; the slight neurological signs, which were observed by the doctor prior to the

operation, also disappeared; he was making a very dramatic, steady, and excellent recovery; and, in the opinion of the doctor, there was every reason to believe he would have recovered from his injury and the surgery, but for a subsequent accident on July 28, 1964.

On July 28, and while still hospitalized from the surgery of July 24, he fell from his hospital bed. As a result of this fall, a surgical wound on the left side of his head was disrupted, and spinal fluid began draining out of his wound.

He was later taken to the operating room and, upon the wound being opened to a greater depth, "there was a gush of fluid, bloody fluid, with fresh bleeding." Thereafter, the operating doctor, who was called as a witness by plaintiff, stated that decedent's condition deteriorated, and it was more or less a steady downhill course until his death on October 9, 1964.

The doctor called by defendant as a witness also stated he was very pleased as to the results of the first surgery on July 24, that decedent certainly seemed better, "and that after the second fall there was always a chronic battle."

Decedent was 67 years of age at the time of his death. He had a long history of diabetes, but such was controlled, and he had worked actively for many years. He had shown some little evidence of aging during the latter part of his life. He also suffered from arteriosclerosis, either as a part of the aging process or as a result of his diabetic condition. The terminal events, or conditions existing at the time of his death, were arteriosclerosis, basilar artery thrombosis, bronchopneumonia, and diabetes aggravated by cerebral injury, with subdural hematoma. The trial court found:

"4. That on July 28, 1964, Alfonso A. Armijo sustained an accident causing bodily injury which resulted in his death on October 9, 1964. That from the date of said accident, Alfonso A. Armijo was continuously disabled until his death. That the death of Alfonso A. Armijo was directly caused by said accident independent and exclusive of disease and all other causes."

It is this finding which defendant contends is not supported by the evidence, and particularly that portion thereof which states that death was caused by the accident of July 28 independently and exclusively of disease and all other causes. Attacks are made on other findings and conclusions of the trial court, but it is conceded that these other findings and conclusions must stand or fall with the finding just quoted.

In determining whether or not the finding is supported, we should first decide what effect must be given to the policy language, "independently and exclusively of disease and all other causes."

In the recent case of Couey v. National Benefit Life Ins. Co., 77 N.M. 512, 424 P.2d 793 (1967), we had to construe the meaning of "solely as a consequence" thereof "independently of all other causes." That language and the language here involved are so nearly the same in meaning, that we consider our holding in that case controlling here. In that case we stated that liability for the loss arises if the accident is the proximate efficient cause of the loss, and that it could not have been intended that liability should arise only when the accident was literally the sole cause.

Although we do not suggest that other terms may not be used to correctly describe or define the causal relationship between the accident and the loss, within the contemplation of the language, "independently and exclusively of disease and all other causes," in the Couey case, as above stated, we used "proximate efficient cause." Proximate is defined in Webster's Third New International Dictionary Unabridged (1966) as "very near, next immediately preceding." In Black's Law Dictionary (4th ed. 1951), it is defined as "nearest and closest in causal connection." In 2 Bouv. Law Dict., Rawle's 3d rev. 1914, p. 2762 it is defined as "closeness of causal connection."

Proximate cause is defined in 2 Bouv. Law Dict. (3d rev. 1914) as:

"That which, in a natural and continuous sequence, unbroken by any new cause, produces an event, and without which the event would not have occurred. The proximate cause is that which is nearest in the order of responsible causation; That which stands next in causation to the effect, not necessarily in time or space but in causal relation."

Efficient cause is defined in Webster's Third New International Dictionary as "the immediate agent in the production of an effect."

■ With these definitions in mind, we must then ascertain if there is any substantial evidence to support the court's finding, "That the death of Alfonso A. Armijo was directly caused by said accident independent and exclusive of disease and all other causes." When a question of fact is presented, and the trial court makes a finding involving this question, this finding will not be disturbed if supported by substantial evidence. Couey v. National Benefit Life Ins. Co., supra; Tsosie v. Foundation Reserve Ins. Co., 77 N.M. 671, 427 P.2d 29; Varney v. Taylor, 77 N.M. 28, 419 P.2d 234 (1966); Board of County Comm'rs v. Vargas, 76 N.M. 369, 415 P.2d 57 (1966).

■ Evidence substantially supports a finding of fact if the evidence is such as would be acceptable to a reasonable mind as adequate support for the finding. Tapia v. Panhandle Steel Erectors Co., No. 8167, 78 N.M. 86, 428 P.2d 625; Wilson v. Employment Security Comm'n, 74 N.M. 3, 389 P.2d 855 (1964).

The evidence relative to the cause of death consists of the testimony of the two medical experts, certain written medical reports, a copy of the certificate of death, and a copy of the corrected certificate of death.

In addition to the facts above related, the operating doctor stated that in his opinion the fall from the bed on July 28 was the direct cause of death. He admitted that the whole chain of events, including "the pre-existing diabetes, the fall of June 1st, the development of cerebral arteriosclerosis, and the flare-up of the diabetes" all played some part in the ultimate death. But he described the fall of June 28 as "the incident which precipitated his [decedent's] downhill course to the point of death," and as "the primary precipitating condition leading to his death."

The other doctor, who was called as a medical expert by defendant, testified: "That the terminal events were cerebral arteriosclerosis with a basilar artery thrombosis, and as a terminal problem that he had diabetes mellitus. That this was complicated by bronchopneumonia."

However, he immediately followed this testimony by stating that he felt in order to explain what happens at the end of life we have to look to the beginning of it, that the average individual develops and performs a long and successful life, and that he then begins to decline, due to a number of factors. This decline or aging process can be accompanied by disease, by accidents, and by injuries, and can be affected or accelerated thereby. Mr. Armijo had shown some little evidence of aging during the latter part of his life, but had been "actively performing very pleasant duties," with a showing of some decline, some problems with diabetes. Then he summarized the fall of June 1, which disabled decedent. After the operation of July 24, decedent seemed,

"* * * to be perhaps back to this previous situation * * * which has been perhaps accelerated a little bit by his first fall. [The fall of June 1] Then he falls out of bed and declines sharply again and develops infection. The wound opens, he has problems, he is unable to care for himself. He becomes a problem, and this is related to the second fall here. [The fall of July 28] He improves perhaps to a lesser degree, certainly, and then declines again at home and gets below again this point of competence,

goes in the hospital for the terminal stay and dies of the accumulation of these events. * * *"

The doctor stated that it was pretty hard to separate all of these things and determine the extent to which any one of them contributed to death, and that:

"In the older people it is sometimes difficult to say a fall is an exclusive cause of death. I don't think I can honestly say it is exclusive cause of death. I think [it] certainly is one of the major contributing factors to the accelerated death of Mr. Armijo. * * *"

In one of the exhibits, which was a claim form furnished by defendant, one of the questions contained in the form and the answers thereto made by the physician were as follows:

Question: "3(a) Was death due directly to accidental bodily injury?

Answer: "3(a) Yes. If yes, give date of accident—7–28–64.

Question: "3(b) What was the nature and full extent of injury?

Answer: "3(b) Fell out of bed injuring head."

Although the evidence may have supported a contrary finding, we are of the opinion that under the rationale of our holding in Couey v. National Benefit Life Ins. Co., supra, the evidence lends substantial support to the finding of the trial court. See also Stokes v. Police and Firemen's Ins. Ass'n, 109 Cal.App.2d Supp. 928, 243 P.2d 144 (1951); Brooks v. Metropolitan Life Ins. Co., 27 Cal.2d 305, 163 P.2d 689 (1945); Metropolitan Cas. Ins. Co. v. Fairchild, 215 Ark. 416, 220 S.W.2d 803 (1949); Inter-Ocean Cas. Co. v. Scott, 91 Ga.App. 311, 85 S.E.2d 452 (1954); New York Life Ins. Co. v. Wilson, 178 F.2d 534 (9th Cir. 1949); Brown v. Metropolitan Life Ins. Co., 327 S.W.2d 252 (Mo.1959); Martin v. Travelers' Ins. Co., 247 S.W. 1024 (Mo.App.1923); New York Life Ins. Co. v. McGehee, 260 F.2d 768 (5th Cir. 1958); Jones v. General Accident, Fire & Life Assur. Corp., 118 Fla. 648, 159 So. 804 (1935); Young v. New York Life Ins. Co., 360 Mo. 460, 228 S.W.2d 670 (1950); Lee v. New York Life Ins. Co., 95 Utah 445, 82 P.2d 178 (1938); Kearney v. Washington Nat. Ins. Co., 184 Wash. 579, 52 P.2d 903 (1935). For additional cases see, Annot., 84 A.L.R.2d 176, 192, 196, 199, 209, 213, 216 (1962).

Finding no error, the judgment of the trial court should be affirmed.

It is so ordered.

CHAVEZ, C. J., and NOBLE, J., concur.