444 P.2d 971

C. E. HILBURN and Bill R. Hilburn, Plaintiffs-Appellees and Cross-Appellants,

v.

John BRODHEAD, A. C. Donell, Joe B. Bain, Anderson Clayton & Co., Defendants-Appellants and Cross-Appellees,

George Dewey Hon and Melba L. Hon, his wife, and Lone Star Producing Co., Defendants-Appellees,

Kenneth Bozeman, Intervenor-Appellee and Cross-Appellant.

No. 8585.

Supreme Court of New Mexico.

Aug. 30, 1968.

Heidel, Swarthout & Samberson, Lovington, for appellees Hilburns & Bozeman.

Benjamin M. Sherman, Deming, for appellees Hons and Lone Star Producing Co.

I. M. Smalley, Deming, for appellant Joe B. Bain.

Edwards, Belk, Hunter & Kerr, El Paso, Tex., William W. Bivins, Las Cruces, for appellants A. C. Donell and John Brodhead.

William J. Mounce, El Paso, Tex., for Anderson Clayton & Co.

OPINION

MOISE, Justice.

The dealings out of which this litigation arose had their inception in 1961. In that year, defendants-appellees George Dewey and Melba L. Hon, hereinafter referred to as "Hon," entered into a contract with defendant-appellant Joe B. Bain, hereinafter referred to as "Bain," by the terms of which Hon agreed to sell and Bain to buy 290 acres of land and certain water rights located in Luna County, New Mexico, for a total purchase price of $87,000.00, payable $4,800.00 upon execution of the contract to be followed by 17 annual payments of $4,-800.00 on January 10 of each year, and a final payment of $600.00.

The court found, and it is not disputed, that Bain was not interested in either the land or water rights contracted to be purchased by him, but bought them in order to acquire 96 acres of cotton allotment appurtenant to the land, this being the method required by the local government office handling cotton allotments for accomplishing a transfer or sale. After entering into the contract Bain utilized the allotments, together with other allotments on his Columbus farm and did not do any farming on the land purchased from Hon. The annual payments called for by the contract were made in 1961 and in 1962. Thereafter, in 1963, a payment of $12,500.-00 was made, but no payments were made in 1964 and 1965.

In November 1964 plaintiffs-appellees, hereinafter referred to as "Hilburns," pursuant to a bid at an auction sale, entered into a contract to purchase the farm of Columbus Farm & Cattle Company, Inc. (successors in interest to Bain), hereinafter referred to as "Columbus," including water rights and cotton and grain allotments, but not including the Hon land, for a total purchase price of $216,000.00. It thereafter came to Hilburn's attention that 96 acres (sometimes referred to in the record as 94 acres) of cotton allotment which they had understood they were buying, could not be delivered because appurtenant to

lands not included in the sale to them, and Hons, the owners of the land to which they were appurtenant, made claim for the payment of $64,925.00, being an amount equal to unpaid balance on the defaulted contract with Bain. Also, the other defendants-appellants, hereinafter referred to collectively as "appellants," as well as additional claimants, had come forward with claims against Bain or Columbus which they sought by court action to have paid out of the proceeds of the sale to Hilburns.

Because of the problems of closing the transaction resulting from these claims, Hilburns filed this interpleader action, setting forth their contract of purchase together with the fact they had paid $61,987.-92 thereunder and are obligated for an additional $75,000.00 on account of the balance on a mortgage on the property, leaving only $79,012.08 unpaid. They are seeking to have the validity of the various claims determined, and directions given concerning payment of the balance of the purchase price to those entitled thereto. In a second count, partial rescission of the contract and reduction of the purchase price in the amount of $87,000.00 is sought because of the seller's inability to deliver the 96 acres of cotton allotment appurtenant to the Hon land. In a third count, Hilburns ask $87,000.00 as damages from Bain and Columbus because of alleged false representations concerning the 96 acres of Hon cotton allotment. Hons and the appellants appeared and answered and, after trial, the court determined that because of the failure to receive the Hon cotton allotment Hilburns were entitled to an abatement from the price agreed to be paid of $64,925.00, determined to be the value of the allotment, which amount was ordered paid to Hons pursuant to an agreement between Hilburns and Hons for the purchase and sale of the allotment and the lands to which it is appurtenant. The court then entered judgments in favor of appellants against Bain and Columbus, and specified the order for payment of each. Inasmuch as the balance of money remaining in court after the purchase price is reduced by $64,925.00, deter-

mined to be due the Hons, would be insufficient to satisfy the judgments of appellants, they have appealed.

We are here called upon to determine if there is substantial evidence to support the court's findings that in May 1963, when Hons conveyed the 290 acres to Bain and received a payment of $12,500.00, it was not intended by them that this should be all that Bain was to pay for the cotton allotment less the land, which was to be reconveyed to Hons. Further, we must determine whether there is substantial support for the court's finding that the conveyance was made with the understanding that the contract price should be paid in full by Bain, after which Hons could repurchase the land at a mutually agreeable price, and that, on November 16, 1964, there was an unpaid balance of $64,925.00 on the contract which resulted in a forfeiture thereof by Hons on February 3, 1965.

█ █ We have carefully considered the proof on these questions to which our attention is called by the briefs. Although it is possible that if the court had made a determination that when the $12,500.00 was paid the parties intended a new contract or novation to replace the original one executed by them, and such a finding would have found substantial support in the proof, we are certain, without setting forth the facts in detail, that the finding as made has equal, if not greater, support in the evidence. A finding of fact supported by substantial evidence will not be disturbed by us. Armijo v. World Insurance Co., 78 N.M. 204, 429 P.2d 904 (1967); Ash v. H. G. Reiter Co., 78 N.M. 194, 429 P.2d 653 (1967). Accordingly, the facts in this regard as found by the trial court are the facts upon which the case will be determined here.

█ Appellants assert with great conviction that Hon was not a creditor of Bain under the facts found and, accordingly, was not entitled to assert any claim against the proceeds from the sale to Hilburns. Hon admits that he is not a creditor, but together with Hilburns maintains, and we think correctly, that he was properly joined because of his interest in the cotton allotment, and his right to recover in the event the purchase price was reduced, as determined by the trial court. The court found, and there is no proof to the contrary, that on April 23, 1965, Hilburns agreed to pay Hon $64,925.00 for his land and appurtenant cotton allotment provided the $216,000.00 purchase price contracted to be paid by them for the Columbus property was reduced by this amount.

It would thus appear that we must determine if the court erred when it reduced the purchase price by $64,925.00, and when it ordered the amount paid to Hon. Relief was accorded to Hilburns by an abatement of the purchase price, pursuant to Count II of their complaint wherein partial rescission of their contract was sought, because the 96 acres of cotton allotment which it was represented they were buying could not be delivered.

█ That the sale was one in gross would seem to be clear since the entire property consisting of land, water rights, cotton and grain allotments, as well as farm machinery, implements and tools, was included for a single price without any attempt to place a price on any particular item. See Branch v. Walker, 56 N.M. 594, 247 P.2d 172 (1952). That case held that where the sale is in gross, a purchaser is not entitled to diminution or abatement of the purchase price, absent fraud or gross mistake. That equity will ordinarily grant relief for fraud or gross mistake where there is a material deficiency in the acreage from that contracted to be sold, even when the transaction is in gross, is held by a majority of courts. See Hardin v. Hill, 149 Mont. 68, 423 P.2d 309 (1967); Lichtenthaler v. Clow, 109 Or. 381, 220 P. 567 (1923); Annot., 1 A.L.R.2d 9, 64, 130 (1948). The problem here is not one of a deficiency of acreage of land, but rather of acreage of cotton allotment. However, we do not perceive that a different rule should be applied. In Logwood v. Holland, 131 Va. 186, 108 S.E. 571 (1921), the rule

was held applicable where an orchard which had been sold was found to contain fewer trees than had been represented. The court there held that the rule applicable to sales of land where there is a material discrepancy in the acreage was controlling. We quote the following from that case:

"* * * It is probably true, as contended by counsel for appellants, that bills in equity seeking a purely pecuniary recovery on account of mutual mistake (or mistake of one party caused by fraud or culpable negligence of the other) have heretofore in this state been confined to cases involving a shortage of acreage, or loss of part of the acreage contracted for by title paramount. Some of the cases, however, have expressly recognized the propriety of considering improvements or other items of special value in fixing the abatement, and we are unable to see any reason why this principle, so sound and just in itself, and so well established as to shortage of acreage, should not be extended in a proper case to mistakes resulting in loss of any part of the realty which affected the purchase price. The underlying reason for allowing an abatement when there has been a loss of acreage is that the estimated amount influenced the price. * * *"

See also, Turner v. Holloway, 146 Va. 827, 132 S.E. 685 (1926). In our view, the rule quoted is correct and applicable under the facts here.

Concerning the representations regarding the cotton allotment the evidence discloses a brochure offering the property at auction sale. Therein is a statement that 176 acres of cotton allotment were appurtenant to the land. Testimony was received from Hilburns concerning the materiality of the allotments in the overall value of the property, the value they placed on them, together with the statement that they would not have been interested in the purchase without them. The court made the following findings, based upon the proof and sufficiently supported thereby:

"15. That Defendants Columbus Farm & Cattle Company, Inc., and Joe B. Bain represented to the Plaintiffs that 176 acres of cotton allotment were appurtenant to their lands, and these representations were very material, and the nature and amount of the crop allotments appurtenant to the land in question was [sic] of the essence of the value of the land.

"16. That Plaintiffs relied upon the representations of the sellers as to the nature and amount of the crop allotments appurtenant to the lands purchased by Plaintiffs.

"17. That the representations by Defendants Columbus Farm & Cattle Company, Inc. and Joe B. Bain, as sellers, to the Plaintiffs as to the nature and amount of the cotton allotments appurtenant to the land in question were not correct pursuant to the applicable rules of the ASCS, U. S. Department of Agriculture, and the same were known or should have been known to said sellers.

"18. That Plaintiffs have paid a substantial part of the purchase price and have entered into possession of the lands in question, and it is not now reasonably possible to rescind the Contract and place the parties in a status quo; and Plaintiffs are entitled to an abatement of the purchase price for the reasonable value of the approximately 94 [sic] acre shortage of cotton allotment pertinent [appurtenant] to said land."

These findings were followed by conclusions that Hilburns were entitled to abatement in the amount of $64,925.00. Even though only partial rescission was sought and granted, we perceive that a court of equity has power to meet the problem presented, and to fashion a proper remedy to accomplish a just and proper result, and that the trial court in doing so in the instant case did not err. Compare Roman v. Ries, 259 Cal.App.2d 60, 66 Cal. Rptr. 120 (1968). See 1 Pomeroy, Equity Jurisprudence, § 109 (5th Ed. 1941) and 3

Pomeroy, Equity Jurisprudence, § 910 (5th Ed. 1941).

We must still consider the contention of appellants that the amount of abatement was incorrect and excessive. Their interest arises because any amount by which the abatement might be reduced would be available to apply on their judgments.

In 54 A.L.R.2d 660 (1957) is found an annotation on the measure of damages to which a vendee of property is entitled when, through fraud or mistake, he has not received the acreage represented as being sold. Discussed there are two rules, one denominated the "out of pocket" rule which computes damages as the difference between the actual value of the property acquired and the consideration actually paid; and the other called the "benefit of bargain" rule. The measure under this rule, assertedly supported by the weight of authority, is the difference between actual value of the property at the time of making the contract and the value it would have had if the representations had been true. We have not had our attention directed to any case in New Mexico involving real estate where we have been called upon to choose between the two measures. However, we note Industrial Supply Co. v. Goen, 58 N.M. 738, 276 P.2d 509 (1954), and Stewart v. Potter, 44 N.M. 460, 104 P.2d 736 (1940), where this court has recognized the majority rule of "benefit of bargain" as applicable where a purchaser has been defrauded in a transaction relating to personal property. Compare Carrel v. Lux, 101 Ariz. 430, 420 P.2d 564 (1966). Generally, no distinction is drawn by the courts whether personal or real property is involved. See Annot., 113 A.L.R.3d 875, 936 (1967).

In our view, no reason can be advanced why the rules as to damages for shortages of acreage should not apply where other discrepancies, such as the one here at issue, are present. Similarly, we see no reason for acceptance of a different rule under the facts here from that adopted with reference to personal property in the

cases cited above. See Lobdell v. Miller, 114 Cal.App.2d 328, 250 P.2d 357 (1953).

Under the facts of this case, the damages would be the same whichever rule we follow since no claim is made of value in the property as represented beyond the price agreed to be paid. Our problem arises in considering the determination made by the court that the property purchased, which did not include the 96 acres of Hon cotton allotment, was worth $64,925.00 less than the $216,000.00 which Hilburns agreed to pay for the property including the Hon cotton allotment.

Appellants point to the testimony of C. E. Hilburn wherein he stated that the property would have been worth $216,000.00, the amount he had agreed to pay, if he had gotten 176 acres of cotton allotment as represented, and his further testimony that without the 96 acres of Hon allotment it was worth $177,600.00, or a difference of $38,400.00. It is appellants' position that Hilburns are bound by this testimony.

On the other hand, our attention is directed to Mr. Hilburn's additional testimony stating that in his opinion cotton allotments in this area are worth $1,000.00 per acre, which would mean the 96 acres were worth $96,000.00. It is recognized that in cases such as the present, evidence of the cost or value of the property not received is admissible, although not necessarily determinative, in establishing the difference between contract price, or value of property if representation had been true, and the value of the property received. Compare, Okoomian v. Brandt, 101 Conn. 427, 126 A. 1, 332 (1924); Koehler v. Stenerson, 74 Idaho 281, 260 P.2d 1101 (1953).

Also, an expert witness was presented and testified in answer to a hypothetical question that in his opinion a shortage of 96 acres of cotton allotment would have reduced the value of the property by approximately one-third. This would be $72,000.00.

With these three figures ($38,400.00, $72,000.00 and $96,000.00) before it, can we say that the court erred in its conclusion

that Hilburns were entitled to an abatement of $64,925.00? This is within the figures proven and is the amount for which Hilburns can acquire the absent cotton allotment acreage and thereby have the benefit of the bargain into which they expected to enter.

■ While we recognize the rule holding a party generally bound by his own testimony, there are certain recognized exceptions. One of these followed in Wallach v. Paddock, 49 N.M. 317, 163 P.2d 632 (1945), is where there is an inconsistency between testimony given on direct and on cross examination. This rule possibly would have permitted the trial judge to choose between the extremes of the figures testified to by Hilburn. Another rule, and one we consider particularly applicable, relieves opinion testimony of binding effect which would attach to testimony concerning positive and definite facts. See Anderson-Prichard Oil Corporation v. Parker, 245 F.2d 831 (10th Cir. 1957); Clark v. Haggard, 141 Conn. 668, 109 A.2d 358, 54 A.L.R.2d 655 (1954); Annot., 169 A.L.R. 798, 805 (1953); 32A C.J.S. Evidence § 1040(3), p. 776 (1964). Under the circumstances here present, considering all the proof referred to above, we cannot say the court erred in concluding that the difference in the value between what was sought to be bought and what was received was $64,925.00, being the value of the 96-acre cotton allotment and the amount for which it could be purchased.

■ We would note that the judgment in favor of Hon, based on his contract with Hilburns, was outside the issues in the case. However, how have appellants, except possibly Bain, been damaged by this? So long as the abatement is allowed, the money available to appellants is reduced by the amount of the abatement, and whether Hilburns pay the money to Hon under the contract, or in compliance with the court's judgment can be of no concern to appellants. Bain might complain about the amount of the abatement so as to get maximum amounts credited on his debt to

appellants, but as soon as the court determined that he had no interest in the allotment and the amount the purchase price should be abated because of that fact, he had no further interest in how the court handled the matter as between Hilburns and Hon.

■ We have not overlooked the fact that the original contract between Bain and Hon included 290 acres of land in addition to the cotton allotment, and that for the amount of the abatement agreed to be paid over to Hon the Hilburns will receive this land in addition to the property covered by their contract with Columbus. Appellants assert that this is a windfall to Hilburns. The trial court was evidently of the opinion that the cotton allotment was of the value found without the land. The fact that Hilburns could purchase the land to which it was appurtenant along with the allotment, for the same price, does not necessarily prove otherwise. As already noted, there is substantial evidence to support the value found by the court and it would appear that Hon, having received $22,075.00 from Bain for the land and allotment, was willing to give Hilburns the benefit of the amount already received on his contract with Bain. Accordingly, if Hilburns received property worth $87,000.00 by a payment of $64,925.00, when $64,925.00 represents the reasonable value of the cotton allotment, no one should be heard to complain. We do not consider it a windfall. Rather, we would describe it as the benefits of a bargain, openly and freely entered into without cause for complaint by any of the appellants, including Bain.

■ We would add a word concerning appellants' argument to the effect that Hilburns should be estopped to claim mistake concerning the 96-acre allotment since, before entering into the contract of purchase, they had made inquiry at the government office concerning it. However, it does not appear that they were advised that the 96 acres could not be sold since the Hon land to which it was appurtenant was not included. We see nothing in the

inquiries of the Hilburns that in any way suggests that they were not relying on the representations made by Bain, Columbus and their agents, the auctioneers, as, in our opinion, they had a right to do. Under the circumstances, their right to partial rescission cannot be questioned. Compare Bennett v. Finley, 54 N.M. 139, 215 P.2d 1013 (1950); Bell v. Kyle, 27 N.M. 9, 192 P. 512 (1920); Civille v. Bullis, 209 Cal.App.2d 134, 25 Cal.Rptr. 578 (1962); Crawford v. Nastos, 182 Cal.App.2d 659, 6 Cal.Rptr. 425, 97 A.L.R.2d 840 (1960); Gormly v. Dickinson, 178 Cal.App.2d 92, 2 Cal.Rptr. 650 (1960); Libby Creek Logging, Inc. v. Johnson, 225 Or. 336, 358 P.2d 491 (1960). The instant case differs from Viramontes v. Fox, 65 N.M. 275, 335 P.2d 1071 (1959), where it appeared that the purchaser either did not rely on representations made but, rather, upon his own investigation, or that the representations were not material. However, in that case, the court recognized the rule to be as stated above that misrepresentations of material fact, even if made in good faith, when relied upon by a purchaser, furnish grounds for rescission.

We note appellants' point concerning claimed error by the court in fixing priorities of a certain creditor. We find it unnecessary to consider the arguments advanced because it is apparent that no moneys will be available from the interpleaded funds to pay any of those about whom complaint is made, all of whom had rights prior to those of appellants.

For the same reason we find it unnecessary to answer the question raised by appellants to the effect that Hilburns should have been required to pay interest on the unpaid balance of the purchase price, from the date they took possession of the property to the date of actual payment into court. According to our computations, no amounts would be available to appellants even if interest were computed as requested. Accordingly, it would be a useless gesture to determine the question, and we decline to consider it.

In view of our disposition of the appeal, it is not necessary that we consider Hilburns' cross appeal. It appears from the brief that it has no pertinence unless this court should conclude that the judgments in favor of Hilburns and Hon should be reversed.

It follows from what has been said that the judgment appealed from should be affirmed. It is so ordered.

CHAVEZ, C. J., and CARMODY, J., concur.